**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

            PLAINTIFF,

vs.

803 CAPITOL STREET VALLEJO, CALIFORNIA 94590 AND 1441 VAQUERO GLEN ESCONDIDO, CALIFORNIA 92026,

            DEFENDANTS.
_____/

CASE NO.:1:06-CV-01710
JUDGE: ROSEMARY M. COLLYER

**CLAIMANT'S MOTION TO STRIKE VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Claimant, Deborah Jeane Palfrey, by and through her undersigned counsel and pursuant to Federal Rules of Civil Procedure, Rule 12(e), moves to strike the Verified Complaint for Forfeiture *in Rem*, and for grounds in support thereof states as follows:

**SUMMARY OF ARGUMENT**

The government seeks forfeiture of the Defendants upon the two related theories. First, that the Defendants were "involved in a money laundering offense in violation of 18 U.S.C. §§ 1956 or 1957." Second, that the Defendants "constitutes or [are] derived from proceeds traceable to, among other offenses, any offense that is a "specified unlawful activity"[1] of the federal anti-money

---

[1] "Section 1961(1)(B) includes "any act which is indictable under [18 U.S.C. Sec. 1952]," which in turn states: (a) Whoever travels in interstate commerce or uses the mail or any facility in interstate ... commerce, with intent to – (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3) shall be ... imprisoned for not more than five years.... 18 U.S.C. Sec. 1952. Under this statute, unlawful activity means "any business enterprise involving ... prostitution offenses in violation of the laws of the State in which they are committed." 18 U.S.C. Sec. 1952(b)." *United States v. Montague*, 29 F.3d 317 (7th Cir. 1994).

laundering statutes" – to wit, prostitution.

However, the Complaint in this matter must be dismissed as it fails to meet the heightened pleading requirements which govern forfeiture complaints. In particular, the Complaint lacks <u>any</u> time frame articulation, thereby preventing Claimant from investigating the merits of a statute of limitations defense.

More importantly, the Complaint lacks factual allegations to support a legal conclusion of "prostitution" in each of the three jurisdictions vaguely referenced in the Complaint. Indeed, notably in the District of Columbia, prostitution is <u>not</u> illegal.

Finally, as the mandatory verification of the Complaint was <u>not</u> made by anyone with personal knowledge of the alleged illegal activities, the Complaint must be dismissed for lack of first-hand knowledge sufficient to justify the extreme invasion of the seizure of Claimant's property.

### I. A FORFEITURE COMPLAINT MUST MEET A HIGHER STANDARD OF PLEADING

Plaintiff seeks forfeiture pursuant to 18 U.S.C. §983 which requires that "the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims . . ." §983(a)(3)(A).

According to the Supplemental Rules, a complaint in an *in rem* action "shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed.R.Civ.P. E(2)(a).

"Notwithstanding the availability of discovery and the motion for a more definite statement, Rule E(2)(a) contemplates that a claimant be able to respond without further procedural maneuvering. The general Federal Rules of Civil Procedure do apply to civil forfeiture actions, but

the Supplemental Rules take precedence when the two are inconsistent. See Fed.R.Civ.P. A; 7A J. Moore & A. Pelaez, *Moore's Federal Practice* p E.02 (2d ed. 1983). Rule E(2)(a) requires a more particularized complaint than is necessary in civil actions generally or in those admiralty proceedings where drastic remedies, such as *in rem* forfeitures, are not sought. See 12 C. Wright & A. Miller, *Federal Practice & Procedure* Sec. 3242 (1973); 5 C. Wright & A. Miller, *Federal Practice & Procedure* Sec. 1227 (1969)." *United States v. $39,000 in Canadian Currency,* 801 F.2d 1210, 1216 (10th Cir. 1986).

Likewise, the Eleventh Circuit has held: "Courts interpreting the rule have held that Supplemental Rule E(2) means precisely what it says: the government's complaint must contain sufficient facts to enable claimants to commence an investigation of the facts initially alleged and to respond with some degree of particularity. . . We agree and hold that a section 881(a) forfeiture complaint must allege sufficient facts to provide a reasonable belief that the property is subject to forfeiture: in particular, that the government has probable cause to believe that a substantial connection exists between the property to be forfeited and the exchange of a controlled substance." *United States v. $38,000.00 in United States Currency*, 816 F.2d 1538, 1548 (11th Cir. 1987)(Citations omitted).

Here, a review of the allegations of the instant complaint reveal a <u>failure</u> to comply with Rule E(2)'s requirements, hence the complaint must be dismissed.[2]

---

[2] "Rule 12 of the Federal Rules provides that a party may file a motion to strike a complaint prior to filing an answer. Fed.R.Civ.P. 12(f). A claim that the complaint does not state sufficient facts to permit the party to frame a responsive pleading is a valid basis for a motion to strike. Fed.R.Civ.P. 12(e). While under the Federal Rules a party wishing to file such a motion does so after making a motion for a more definite statement, *id.*, the standard of particularity for complaints filed pursuant to the Supplemental Rules is more stringent than is that of the Federal Rules. See Supplemental Rule E(2); *$39,000*, 801 F.2d at 1216 & n. 3; 12 C. Wright & A. Miller, *Federal*

**II.    THE INSTANT COMPLAINT FAILS TO MEET THE RULE E(2) STANDARD**

The only "facts" alleged by the Plaintiff in the Complaint which attempt to support the forfeiture of the seized properties for prostitution are as follows:

> 1.    In June 2004, investigators with the Internal Revenue Service and the United States Postal Service began a joint investigation of an illegal prostitution business, operating as an escort service under the name Pamela Martin and Associates, in the Washington, D.C., metropolitan area. (Complaint ¶8).
>
> 2.    Palfrey advertises her prostitution business as an escort service in the yellow pages, on the Internet, and in the Washington City Paper. (Complaint ¶12).
>
> 3.    Palfrey recruits female prostitutes through advertisements on the Internet and in the Washington City Paper. Palfrey's website is www.pamelamartin.com. (Complaint ¶13).
>
> 4.    Palfrey requires that the female prostitutes she hires be at least twenty-two years of age and have some college education. (Complaint ¶14).
>
> 5.    Once hired, each female prostitute is sent by Palfrey to a "screening" appointment at which she is required to engage in sexual activity without being paid to insure that she is not a law enforcement officer. (Complaint ¶17).
>
> 6.    Palfrey's customers pay a fee of approximately $300 in cash for the sexual acts performed by the female prostitutes that work for

---

*Practice & Procedure* Sec. 3242 (1973). In particular, the Supplemental Rules provide that the complaint must be sufficiently specific that a motion for a more definite statement is unnecessary. See Supplemental Rule E(2). Accordingly, construing David's motion to dismiss as a motion to strike, we conclude that the motion was properly filed as David was not required to first make a motion for a more definite statement." *$38,000.00 in United States Currency*, 816 F.2d 1538, f/n #20 (11th Cir. 1987). *Accord*: *U.S. v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 152 (3rd Cir. 2003) ("Just as a civil defendant may respond to a complaint with a motion to dismiss, and must then file an answer within ten days after the court disposes of that motion, a forfeiture claimant may, after being served with a complaint and filing a verified claim, respond to a forfeiture complaint by filing a motion to dismiss; the claimant must then serve an answer within ten days after the court disposes of that motion.").

Palfrey. (Complaint ¶22).

Hence, there are only two sets of allegations which attempt to connect the seized property with "specified illegal activity".

First, the repeated conclusory denomination of Claimant's independent contractors as "prostitutes". (Complaint ¶¶13-14, 17-24, 26-27). Such denomination of the escorts as "prostitutes" is meaningless without allegations which would support such a conclusion. Notably, such allegations are not present in the Complaint.

Second, the Complaint alleges that "customers pay a fee of approximately $300 in cash for the sexual acts performed by the female prostitutes that work for Palfrey." (Complaint ¶22). As more fully demonstrated below, receiving cash for "sexual acts" does not necessarily make one a prostitute and in all events is not illegal in the Washington D.C. area.

### A.  STATUTE OF LIMITATIONS

The statute of limitations in a forfeiture matter is governed by 18 U.S.C. § 981(d) which refers to 19 U.S.C. §1602 *et seq*. At 19 U.S.C. § 1621(1) it is provided, in relevant part, that: "in the case of an alleged violation of section 1592 or 1593a of this title, no suit or action . . .may be instituted unless commenced within 5 years after the date of the alleged violation."

Here, there is <u>not</u> a single allegation in the Complaint as to when the alleged violations occurred. Indeed, the only date mentioned apparently relate to transactions that occurred as early as the year 1991. (Complaint ¶31).

Thus, any such claim as to alleged illegal acts which occurred more than five (5) years before the filing of the complaint would be barred by the statute of limitation. Accordingly, the Complaint does not meet Rule E(2)'s pleading requirement as they fail to provide sufficient facts to permit

Claimant to determine if the statute of limitations has run on the government's forfeiture claims.

  **B.**  **NO ILLEGAL SEXUAL ACTS ARE ALLEGED IN THE COMPLAINT**

  The Complaint only alleges sexual acts in two paragraphs. First, that Claimant's escorts "engage in sexual activity without being paid". (Complaint ¶17). Plainly, such non-paid sexual acts are protected by the holding in *Lawrence v. Texas,* 539 U.S. 558 (2003)[3] and in all events are not criminal in Maryland, Virginia or the District of Columbia.

  Second, the Complaint alleges that "Palfrey's customers pay a fee of approximately $300 in cash for the sexual acts performed by" Palfrey's escorts. (Complaint ¶22). Notably, the term "sexual acts" is not defined and as such is so vague as to be violative of Rule E(2)'s specificity requirement. Indeed, performing a "sexual act" for money is not necessary illegal in the District of Columbia, Virginia and/or Maryland – the alleged *loci* of the escort service operated by Claimant. (Complaint ¶8).

  As detailed below, that term of art has a specific statutory meaning in each of the three jurisdictions at issue which the Complaint does not incorporate by reference hence leaving the term "sexual acts" to mean – as it is commonly understood – perfectly legal "sexual acts" notwithstanding that such acts are for hire.

---

  [3] Indeed, it is an open question where the statutes which attempt to criminalize sexual behavior for hier are not now barred by the holding in *Lawrence* that the "right to liberty under the Due Process Clause gives them the full right to engage in their conduct without intervention of the government. . .It is a promise of the Constitution that there is a realm of personal liberty which the government may not enter. . .The Texas statute furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual." *Id.* at 578. Accordingly, *Lawrence* raises the question as to whether indeed any state any longer has the authority to "demean their existence or control their destiny by making their private sexual conduct a crime" when two consenting adults agree to engage in sexual conduct with an explicit – rather than an implicit – exchange of value. *Id.* at 578.

1. **MARYLAND "SEXUAL ACTS"**

In Maryland, "Prostitution" means the performance of a sexual act, sexual contact, or vaginal intercourse for hire." Maryland Code, § 11-301(c). Likewise, "Sexual act has the meaning stated in § 3-301 of this article." Maryland Code, § 11-301(d). Maryland Code § 3-301(e) (1) defines "Sexual act means any of the following acts, regardless of whether semen is emitted: (i) analingus; (ii) cunnilingus; (iii) fellatio; (iv) anal intercourse, including penetration, however slight, of the anus; or (v) an act: 1. in which an object penetrates, however slightly, into another individual's genital opening or anus; and 2. that can reasonably be construed to be for sexual arousal or gratification, or for the abuse of either party. (2) "Sexual act" does not include: (i) vaginal intercourse; or (ii) an act in which an object penetrates an individual's genital opening or anus for an accepted medical purpose."

Likewise, "sexual contact" in Maryland means "an intentional touching of the victim's or actor's genital, anal, or other intimate area for sexual arousal or gratification, or for the abuse of either party. (2) Sexual contact includes an act: (i) in which a part of an individual's body, except the penis, mouth, or tongue, penetrates, however slightly, into another individual's genital opening or anus; and (ii) that can reasonably be construed to be for sexual arousal or gratification, or for the abuse of either party. Sexual contact does not include: (i) a common expression of familial or friendly affection; or (ii) an act for an accepted medical purpose." § 3-301(f).

Finally, "Vaginal intercourse" means genital copulation, whether or not semen is emitted. Vaginal intercourse includes penetration, however slight, of the vagina." § 3-301(g).

2. **VIRGINIA "SEXUAL ACTS"**

In Virginia, "Any person who, for money or its equivalent, commits adultery, fornication or

any act in violation of § 18.2-361, or offers to commit adultery, fornication or any act in violation of § 18.2-361 and thereafter does any substantial act in furtherance thereof, shall be guilty of being a prostitute, or prostitution, which shall be punishable as a Class 1 misdemeanor." Virginia Code, §18.2-346.

Plainly, "adultery" is not alleged in the Complaint. Hence, in Virginia the question of whether a person is engaging in prostitution is did – for hire – that person commit fornication which is defined as a person "not being married, who voluntarily shall have sexual intercourse with any other person, shall be guilty of fornication, punishable as a Class 4 misdemeanor." Alternatively, under §18.2-361 "Crimes against nature; penalty", "If any person carnally knows in any manner any brute animal, or carnally knows any male or female person by the anus or by or with the mouth, or voluntarily submits to such carnal knowledge, he or she shall be guilty of a Class 6 felony, except as provided in subsection B."

Patently, as a term of art, the Commonwealth of Virginia does not employ the term "sexual acts" in its definition of prostitution. Moreover, under *Lawrence*, certain parts of Virginia's statutes are now plainly unconstitutional. Therefore, in Virginia alleging that someone engaged in "sexual acts" for hire is a meaningless allegation and of no legal import.

### 3.   DISTRICT OF COLUMBIA "SEXUAL ACTS"

In the District of Columbia, prostitution "means the engaging, agreeing to engage, or offering to engage in sexual acts or contacts with another person in return for a fee." D.C. Code, §22-2701.01.

Significantly, the D.C. Code fails to further define "sexual acts or contacts". Moreover, and of much greater import, in the District of Columbia, prostitution is not illegal. "The District of

Columbia, for example, prohibits solicitation and pimping, D.C. Code §§ 22-2701, 22-2707, **but does not criminalize prostitution itself**." *U.S. v. Jones*, 909 F.2d 533, 538 (D.C. Cir. 1990)(Emphasis added). Accordingly, the allegations of the Complaint regarding "prostitution" as they relate to Washington, D.C., simply do not amount to "specified illegal activity" as required by 18 U.S.C. §1952(b) because they are not illegal in Washington, D.C.

In sum, to simply allege that "customers pay a fee of approximately $300 in cash for the sexual acts performed by the female prostitutes" is simply insufficient to establish that in each of jurisdictions in the Metropolitan Washington D.C. area criminal laws were being broken.

Based upon the Maryland, Virginia and District of Columbia statutes, certain "sexual acts" for hire are legal. In particular, it is not prostitution if, for hire, the escorts:

    i.    Dance nude for a customer;
    ii.   Permit the customer to be nude;
    iii.  Give a massage while escort and customer are nude provided there is no handling or fondling of the sexual organs of either parties.
    iv.  Verbal role playing of a sexual nature while nude;
    v.   Masturbation while nude by either the escort or the customer;
    vi.  Any of the above in any combination.

Moreover, all three jurisdiction recognize and licence legal sexual acts for hire. Though admittedly coarse, the Court is asked – pursuant to the mandatory requirement of Federal Rules of Evidence, Rule 201(d) – to take judicial notice of the nature and numerosity of the "strip clubs" in the Metropolitan D.C. Clearly, the "sexual acts" which occur for hire in these establishments do not become prostitution simply because they are preformed by escorts privately in homes and hotels as alleged in the Complaint. (Complaint ¶21).

### C.    THE DEFENDANTS ARE <u>NOT</u> THE PROCEEDS OF A FELONY

In the Complaint, Plaintiff maintains that forfeiture of the Defendant is authorized by 18 U.S.C. §981 which permits the forfeiture of any property which "constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. §1952." (Complaint, ¶1).

"Proceeds" are defined at 18 U.S.C. § 1956(c)(1) which states:

> As used in this section- (1) the term "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" means that the person knew **the property involved in the transaction represented proceeds from some form**, though not necessarily which form, **of activity that constitutes a felony under State,** Federal, or foreign **law**. . . (Emphasis added).

Significantly, under Maryland, Virginia and the District of Columbia law, prostitution is <u>not</u> a felony.

Accordingly, in order for the Defendants to be "proceeds" of "a transaction from some form . . . of activity that constitutes a <u>felony</u> under State law", they must have been derived from activity which was a felony. Even crediting the vague allegations of the Complaint with enough validity to withstand the pleading requirements of Rule E(2), at best, the Defendants are the proceeds of <u>misdemeanor</u> activity which does <u>not</u> qualify them for forfeiture under §981. As such, the Defendants are not subject to forfeiture.

### D.    CONCLUSORY STATEMENTS ARE NOT ENOUGH

The standard of pleading to satisfy Rule E(2) has been repeatedly defined by courts and includes at a minimum a level of factual allegation lacking in the instant Complaint.

"The peculiar stringency of the particularity requirement in these cases is based on a concern for due process which arises by reason of the 'drastic nature' of these remedies. . . . The requirement is not merely a procedural technicality, but a way of ensuring that the government does not seize and

...

hold, for a substantial period of time, property to which, in reality, it has no legitimate claim. The failure to meet the standard set forth above requires dismissal of the complaint, albeit without prejudice. . . .There is no question that the complaint in this case fails to meet the standard. The government merely described the property, and, parroting the language of the statute, stated that it was forfeitable." *United States v. Pole No. 3172, Hopkinton*, 852 F.2d 636 (1st Cir. 1988).  Notably here, the Complaint doesn't even bother to "parrot" the language of the respective prostitution statutes at issue in each of the three jurisdictions.

Likewise, in *United States v. Two Parcels of Real Property Located in Russell County, Ala*, 2 F.3d 1123, 1127 (11th Cir. 1996) the court found the complaint met Rule E(2)'s requirement upon a finding that:

> The complaints in this case allege that James Brown and his son, Carl Brown, dealt in quantity sales of marijuana and cocaine over a period of time and generally describe the method of operation. Specific sales were not alleged, except for two sales which would not generate the kind of money needed for the purchase of the properties involved. The complaints then alleged the general methods of large scale drug dealers in the handling of cash, and specifically alleged the purchase with cash of each of the properties sought to be forfeited, from whom they were bought, and how the title was handled. They alleged the properties were purchased with the proceeds of drug sales, and that one parcel was used to facilitate the sale of controlled substances.

Here, unlike in drug sale cases, "sexual acts" are not necessarily illegal thus subjecting the property to forfeiture.  Hence, in order for the Complaint to meet Rule E(2)'s requirements, allegations must be made that the seized properties are traceable back to illegal "sexual acts".  Lacking such as the Complaint does, the Complaint is deficient and must be stricken.

Finally, in *United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in State of Ala*, 893 F.2d 1245, 1251 (11th Cir. 1990), the court found the complaint lacking

because it failed to contain the necessary evidence:

> [T]he evidence in this case is deficient in establishing a substantial connection between the dozer and illegal drug transactions. For example, the government failed to offer co-conspirator admissions or any evidence linking the dozer to illegal drug transactions. Likewise, the government offered no evidence to show that Daniel's logging business was merely a front for hiding Pate's illegal drug trafficking. On motion for summary judgment, the FBI agent based his affidavit on his personal conclusions that because Pate, a convicted drug trafficker, had a pattern of making cash purchases in the names of others, the dozer was purchased with illegal drug proceeds. We find such conclusory allegations insufficient to suggest the probable cause requirement of a "substantial connection" between the dozer--owned by a legitimate businessman--and illegal drug transactions as proceeds of a drug transaction. The government, in effect, provided no facts whatsoever to support its claim.

Here, there is <u>no</u> statement from either the escorts or their customers. There is no evidence that the "sexual acts" were illegal.

Last, like the FBI agent in *Four Parcels*, IRS Agent Burris mandatory verification of the instant Complaint is based solely upon "reports and information known to me and/or furnished to me by law enforcement agents." Such a verification – without personal knowledge as required for verification – taints the entire Complaint as <u>not</u> being based upon evidence sufficient to warrant a seizure in this matter.

### III.    CONCLUSION

The government has <u>not</u> met its pleading burden factually or legally in the Complaint. Thus, for the pleading deficiencies as detailed *supra*, the Complaint should be stricken for failing to comply with Rule E(2).

## CERTIFICATE OF SERVICE

      I hereby certify that a true and accurate copy of the served pursuant to LcvR 5.4(d) upon Judith A. Kidwell, Assistant United States Attorney, Criminal Division, Asset Forfeiture Unit, 555 4th St., N.W., Room 4818, Washington, D.C. 20530 this October 22, 2006.

                                                     **MONTGOMERY BLAIR SIBLEY**
                                                     CENTER FOR FORFEITURE LAW
                                                     50 West Montgomery Avenue, Suite B-4
                                                     Rockville, MD 20850-4216
                                                     Voice/Fax:    (202) 478-0371
                                                     E-mail:       mbsibley@civilforfeiture.com


                                                   By:   /s/ Montgomery Blair Sibley
                                                             Montgomery Blair Sibley
                                                             D.C. Bar #464488