**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

        PLAINTIFF,

VS.

803 CAPITOL STREET VALLEJO, CALIFORNIA
94590 *ET AL.*,

        DEFENDANTS.

_____/

CASE NO.:1:06-CV-01710-GK

**CLAIMANT'S REPLY TO PLAINTIFF'S
OPPOSITION TO MOTION TO DISMISS FIRST
AMENDED COMPLAINT FOR FORFEITURE-
IN-*REM***

Claimant, Deborah Jeane Palfrey, by and through her undersigned counsel Replies to Plaintiff's Opposition to Motion to Dismiss First Amended Complaint for Forfeiture-in-Rem and states:

### SUMMARY OF ARGUMENT

Conspicuous by its absence in Plaintiff's Opposition to the Motion to Dismiss ("Opposition") – apparently caused by the failure of Plaintiff to appreciate and therefore address the legal points raised by Claimant – is <u>any</u> legal argument addressing Claimant's points with distinguishing citations to statutory or decisional law rather than purely *ex cathedra* pronouncements.

Moreover, given – with one exception to be distinguished – that each inapposite case cited by Plaintiff is over sixteen (16) years old, the *stare decisis* value is due to be reviewed.

Last, the recent  October 2006  amendments to the District of Columba Code confirm that in fact the District's pre-existing code was constitutionally deficient.

As such, the First Amended Complaint for Forfeiture-in-Rem must to be dismissed with prejudice.

-1-

## I.   PLAINTIFF'S LEGAL ARGUMENTS ARE INAPPOSITE

Plaintiff ignores the legal arguments and case law cited by Claimant and misdirects the Court from Claimant's points by mis-stating them to the Court.[1]

### A.   LEGAL IMPOSSIBILITY

Employing the royal "we", Plaintiff commences by misunderstanding Claimant's citation to *United States v. Jones* stating "As we understand it, claimant's argument appears to be based largely on a misreading of" *United States v. Jones*. (Opposition, p. 2).  Claimant's sole purpose for citing this case was to establish that in the District of Columbia, prostitution is <u>not</u> illegal.  Upon this indisputable premise, Claimant then continues to urge a legal impossibility bar to forfeiture thereon.[2] Notably in *Jones*, the issue of legal impossibility was <u>never</u> addressed and hence it is inapposite to the question of legal impossibility as a bar to this forfeiture.  Thus, while "*Jones* did not hold that the prostitution statutes enacted by the District of Columbia could not form the basis for a Travel Act offense"[3], neither did the Court rule that they could.

---

[1]   Claimant is compelled to note that up to this point in the litigation that Claimant has averred no fact not found in her Statement of Claim filed under oath with the Court.  Hence, Plaintiff's gratuitous statement that "Claimant does not deny that the escorts she hired engaged in sexual intercourse and oral sex with customers for money.  Nor does claimant (sic) deny that the defendant properties are in fact traceable to proceeds or enterprise she operated as a business" is meaningless and an improper attempt to influence this Court as fact finder.  (Opposition, p. 2).

[2]   "Legal impossibility," we have explained, "occurs when the actions which the defendant performs or sets in motion, even if fully carried out as he desires, would not constitute a crime." *United States v. Oviedo*, 525 F.2d 881, 883 (5th Cir. 1976).  The traditional view is that legal impossibility is a defense to the charge of attempt--that is, if the completed offense would not be a crime, neither is a prosecution for attempt permitted. *See, e.g., id.*; see also Jeffrey F. Ghent, *Annotation, Impossibility of Consummation of Substantive Crime as Defense in Criminal Prosecution for Conspiracy or Attempt to Commit Crime*, 37 A.L.R.3d 375, 1971 WL 28478, §§ 2, 3 (2004).

[3]   (Opposition, p. 4).

In response to Claimant's articulation of how the doctrine of "legal impossibility" bars this action, Plaintiff solely responds by stating that such an argument is "nonsense."

Ignoring Claimant's cases on point of *United States v. Berrigan*, 482 F.2d 171 (3rd Cir. 1973) and *U.S. v. Hair*, 356 F.Supp. 339 (D.C. District of Columbia 1973), Plaintiff solely cites the inapposite case of *Washington v. Glucksberg*, 521 U.S. 702 (1997) in response <u>without</u> benefit of a page citation or quote to support its assertion that: "upholding Washington's assisted suicide prohibition; neither suicide, nor attempted suicide need be illegal." (Opposition, p. 5, f/n #3).

Such an assertion takes an inappropriate liberty with the actual holding in *Washington v. Glucksberg*, a ninety two (92) page opinion with all nine justices filing opinions. Hardly a case to define anything not specifically addressed by the Court. Indeed, the only issue decided by the *Washington* court was : "We therefore hold that Wash. Rev. Code § 9A.36.060(1) (1994) does not violate the Fourteenth Amendment, either on its face or 'as applied to competent, terminally ill adults who wish to hasten their deaths by obtaining medication prescribed by their doctors.' 79 F.3d, at 838." *Id.* at 735. Nowhere in *Washington* is the issue of legal impossibility addressed in the *malum per se* arena of suicide that *Washington* addresses, let alone the *malum prohibum* arena of prostitution.

### B.    <u>N</u>O <span style="font-variant: small-caps">COURT HAS ADDRESSED CLAIMANT'S CONSTITUTIONAL ISSUES</span>

Plaintiff next acknowledges that Claimant has made Constitutional challenges responding that "Although Claimant is not the first person to make these arguments, from her motion one would think she were. Claimant fails to cite, let alone address, any of the numerous decisions that are directly adverse to her unsupported constitutional attack on prohibiting certain prostitution activities.

-3-

. . . Claimant also forgot *Wood v. United States* . . . ".[4]

A review of the seven cases cited by Plaintiff demonstrates conclusively that <u>each</u> one is inapposite to Claimant's challenges of (i) whether the challenged phrase "sexual acts or contacts" is impermissibly vague or (ii) the Supreme Court's recent expansion of the "penumbra" of "liberty" interests now make sexual relations between consenting adults a "realm of personal liberty which the government may not enter", even if, as alleged, it is for a fee.

### 1. BLYTHER V. UNITED STATES

In *Blyther v. United States*, 577 A.2d 1154 (D.C. 1990) the singular holding was that "we extend the conclusion reached in *Lutz*, that 'commercial sex does not concern an intimate relationship of the sort heretofore deemed worthy of constitutional protection,' to such sexual conduct occurring within a private residence." *Id.* at 1158. *Blyther* in 1990 failed of course to anticipate the holding in *Lawrence v. Texas,* 539 U.S. 558 (2003) which held that the "right to liberty under the Due Process Clause gives them the full right to engage in their conduct without intervention of the government. . . .It is a promise of the Constitution that there is a realm of personal liberty which the government may not enter. . . .The Texas statute furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual." *Id.* at 578.

As such, the liberty issue is clearly before this Court under a new set of definitions.

---

[4]   Claimant's counsel has been litigating in the forfeiture arena against the Department of Justice since 1991 (*U.S. vs. Daccarrett*, 6 F.3d 37 (2nd Cir. 1993)) and during that time has witnessed an increasing level of *ad hominem* arguments by DOJ attorneys in court pleadings which plainly continues in the quote above which expressly challenges the legal competence of Claimant's counsel.  This Court can continue to turn a blind eye to these attempts to undermine the attorney-client relationship in a civil forfeiture matter, a delicate field given the possibility of criminal charges conflicting with loss of personal and real property.  More properly this Court should remove this AUSA and insist that an AUSA who will respect the dignity of the Claimant – who as a proper noun should be capitalized – and not seek to belittle her counsel.

2.    *MUSE v. UNITED STATES*

Plaintiff next cites *Muse v. United States*, 522 A.2d 888 (D.C. 1987) for the proposition that "22 D.C. Code, Section 2701's prohibition against inviting or enticing any person to engage in prostitution was not unconstitutionally vague." (Opposition, p. 6). Such a citation is careless at best.

In *Muse,* the court held <u>only</u> that "Appellant does, however, have standing on the vagueness claim and can argue that the statute provides him with no fair warning of the criminality of his actions. . . .We must reject this contention summarily in  light of our previous discussion of the common meaning of the word 'fee' and the commonly understood commercial nature and context of prostitution." *Id.* at 891. Clearly, in *Muse*, the Court did <u>not</u> consider whether the phase "sexual acts or contacts" was vague as that issue was not raised, only the vagueness of the term "fee".

3.    *FORD v. UNITED STATES*

In *Ford v. United States*, 498 A.2d 1135 (D.C. 1985), Plaintiff represents that the issue of the vagueness of the phase "sexual acts or contacts" was determined.  It wasn't.

*Ford* held that the "conduct" part of the solicitation statute – not the phrase "sexual acts or contacts" – was not vague: "The District of Columbia solicitation statute in question here, because it requires that conduct be for the purpose of prostitution and because it provides that objective criteria must be present in order to support a conviction, is not void for vagueness."  As such, *Ford* did not address Claimant's vagueness point.

4.    *WOOD v. UNITED STATES*

Plaintiff next cites *Wood v. United States*, 498 A.2d 1140 (D.C. 1985) confirming that there was no First Amendment right to solicit for prostitution.  Claimant is not making a First Amendment argument but a liberty interest argument arising under Due Process considerations – a different

amendment.  Hence, *Wood* is not remotely applicable.

### 5.    *ELISSA v. UNITED STATES*

*Eissa v. United States*, 485 A.2d 610 (D.C. 1984) cited by Plaintiff, addresses the limited issue of the standard of review of issues <u>not</u> raised to the trial court holding: "Appellant makes several challenges to the constitutionality of the sexual solicitation statute. Since none of these arguments were presented to the trial court, we would have to find plain error before we could reverse appellant's conviction." *Id*. at 612.   While the court in *Eissa* indulges in *dicta* on constitutional "overbreadth" argument, it fails to address either the "liberty" or "vagueness" challenges of Claimant.

### 6.    *LUTZ v. UNITED STATES*

Reaching back almost to when miscegenation was still a crime, Plaintiff next cites *Lutz v. United States*, 434 A.2d 442 (D.C. 1981), for the proposition that "the right to privacy does not encompass right to solicit for prostitution."  Leaving aside the issue in this matter is <u>not</u> solicitation but alleged pandering and procuring, this twenty-six (26) year old case must be re-examined given the holdings since then through *Lawrence v. Texas* to date.

Hence while in 1981 a court could conclude that:"We conclude that there is no fundamental right to privacy for commercial sexual solicitation" *Id*. at 445, post-*Lawrence* such a claim in <u>no</u> longer tenable.

### 7.    *UNITED STATES v. KENYON*

Claimant does not raise an Eighth Amendment "cruel and unusual" punishment argument, the sole precedential value of *United States v. Kenyon,* 354 A.2d 861 (D.C. 1976).

Accordingly, contrary to Plaintiff's assertion, Claimant's constitutional attack is both novel

and valid.  More importantly, it remains unaddressed by Plaintiff in its Opposition.

## II.  RECENT AMENDMENTS TO THE DISTRICT OF COLUMBIA CODE SUPPORT CLAIMANT'S ARGUMENTS

Most significantly, the District of Columbia Code was amended on October 27, 2006, to correct the deficiencies in the Code which are raised herein by Claimant.

In particular, there were two amendments which are attached hereto.  First, §211 criminalized for the first time prostitution apparently recognizing the validity of Claimant's legal impossibility defense. Second, recognizing the "vagueness" of the phrase "sexual acts or contacts", for the first time those terms are defined in §212[5].

Significantly, two individuals testified at the hearings on the October amendments, excerpts of which are attached hereto.

First, Ken Wainstein, United States Attorney for the District of Columbia, testified in support of Bill 16-130, Bill 16-247, Bill 16-335, and Bill 16-381. Mr. Wainstein outlined how each bill

---

[5]

"Sexual act" shall have the same meaning as provided in section 101(8) of .the Anti-Sexual Abuse Act of 1994, effective May 23, 1995 (D.C. Law 10-257; D.C. Official Code 22- 3001(8)). "Sexual contact" shall have the same meaning as provided in section 10l(9) of the Anti-Sexual Abuse Act of 1994, effective May 23, 1995 @.C. Law 10-257; D.C. Official Code § 22-3001(9)).  The Anti-Sexual Abuse Act of 1994 defines "Sexual act means:(A) The penetration, however slight, of the anus or vulva of another by a penis;        (B) Contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; or (C) The penetration, however slight, of the anus or vulva by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. (D) The emission of semen is not required for the purposes of subparagraphs (A)-(C) of this paragraph.  The Anti-Sexual Abuse Act of 1994 defines   "Sexual contact" means the touching with any clothed or unclothed body part or any object, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

would assist in the U.S. Attorney's efforts to prosecute crime. In particular, recognizing the infirmities in the pre-existing statutory scheme, Mr. Wainstein stated "The proposed amendments to the prostitution laws are designed to achieve several objectives: to remove from the Code provisions that have been held insufficient to support a conviction or that are otherwise objectionable . . . and the combination of these provisions should facilitate the investigation and prosecution of prostitution."

Second, Robert Spagnoletti, Attorney General for the District of Columbia, testified in support of Bill 16-247 stating:

> Currently, the act of prostitution is not a crime in the District. Prostitutes are charged with Solicitation of prostitution. ' The Anti-Prostitution Amendment Act of 2005 makes it unlawful for any person to engage in, or solicit for, prostitution and defines "prostitution," "arranging for prostitution," and "soliciting for prostitution." The current law allows law enforcement to make arrests in the most common scenarios, i.e., where an undercover ' officer is solicited, or where an officer hears an explicit solicitation of someone else. However, in those cases where individuals ark found engaging in the act of prostitution, after any negotiation for the act has taken place, there is currently no appropriate charge. In effect, there is a penalty for attempting to engage in prostitution, but not for successfully doing so. Thus, ironically, the law as currently written criminalizes the solicitation of an act that is not itself criminal.

Obviously, neither law enforcement official could come out and say that the District's code regarding prostitution was unconstitutional.  However, reading between the lines of these comments it is clear why (i) prostitution was made illegal for the first time and (ii) why the phrase  "sexual acts or contacts" is finally given definition.

## CONCLUSION

WHEREFORE, the First Amended Complaint is due to be dismissed for the reasons of the

*res* (i) <u>not</u> being the proceeds of an illegitimate business, and (ii) the constitutional infirmities of

Chapter 27's vagueness and invasion of liberty interests as aforesaid.

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the served pursuant to LcvR 5.4(d) upon
William R. Cowden, Assistant United States Attorney, Criminal Division, Asset Forfeiture Unit, 555
4th St., N.W., Room 4818, Washington, D.C. 20530 this December 18, 2006.

**MONTGOMERY BLAIR SIBLEY**
CENTER FOR FORFEITURE LAW
50 West Montgomery Avenue, Suite B-4
Rockville,  MD 20850-4216
Voice/Fax:     (202) 478-0371
E-mail:         mbsibley@civilforfeiture.com

By:   /s/ Montgomery Blair Sibley
         Montgomery Blair Sibley
         D.C. Bar #464488

DISTRICT OF COLUMBIA REGISTER

OCT 2 7 2006

**ENROLLED ORIGINAL**

AN ACT

### D.C. ACT 16-490

IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

OCTOBER 18, 2006

*Codification
District of
Columbia
Official Code*

**2001 Edition**

**2007 Winter
Supp.**

**West Group
Publisher**

To establish, on an emergency basis, due to Congressional review, criminal offenses for recruiting members for criminal street gangs, causing a person to participate in or remain in a criminal street gang, and participating in any felony or violent misdemeanor on behalf of the street gang; to provide for enhanced criminal penalties of up to 1½ times the maximum otherwise provided by law for those adults who commit crimes of violence against minors; to establish a criminal offense for an adult causing a minor to engage in certain status offenses or delinquent acts; to authorize the Chief of Police to declare any public area a prostitution free zone for a period not to exceed 240 hours, and to establish a criminal offense for persons congregating within such a zone for purposes of prostitution after being ordered to disperse; to establish a criminal offense for installing an electronic recording device, mirror, or peephole in such manner as to surreptitiously observe individuals engaged in personal activities including sexual relations, changing clothes, or using a restroom, or for recording any of those activities; to establish a criminal offense for intimidating, impeding, interfering with, or retaliating against a public official or an employee of the District of Columbia; to establish a criminal offense for disabling a telephone or other communicative device for the purpose of preventing a victim from summoning medical or police assistance, or from reporting acts of child abuse or neglect; to amend the Interpreters for Hearing-Impaired and Non-English Speaking Persons Act of 1987 to clarify definitions of communication-impaired and hearing-impaired persons, to require the Metropolitan Police Department to certify qualified interviewers and develop regulations for certifying qualified interviewers, and to expand the list of those entities qualified to certify interpreters to include the United States Department of State and the Metropolitan Police Department; to amend the Prevention of Child Abuse and Neglect Act of 1977 to clarify the requirements of and procedures for criminal background checks for persons who are caring for or residing with children who had been abused or neglected; to amend An Act To provide for the mandatory reporting by physicians and institutions in the District of Columbia of certain physical abuse of children to expand the list of individuals who must report child neglect and the circumstances which mandate that a report be made,

**8686**

OCT 2 7 2006

**ENROLLED ORIGINAL**

Sec. 104. Prostitution free zones.

(a) For the purposes of this section, the term:

(1) "Chief of Police" means the Chief of the Metropolitan Police Department.

(2) "Disperse" means to depart from the designated prostitution free zone and not to reassemble within the prostitution free zone with anyone from the group ordered to depart for the duration of the zone.

(3) "Known participant in prostitution or prostitution-related offenses" means a person who has been convicted in any court in any jurisdiction of any violation involving prostitution or prostitution-related offenses.

(4) "MPD" means the Metropolitan Police Department.

(5) "Prostitution" shall have the same meaning as provided in section 2(3) of the Control of Prostitution and Sale of Controlled Substances in Public Places Criminal Control Act of 1981, effective December 10, 1981 (D.C. Law 4-57; D.C. Official Code § 22-2701.01(3)).

(6) "Prostitution free zone" means public space or public property in an area not to exceed a square of 1000 feet on each side that is established pursuant to subsection (b) of this section.

(7) "Prostitution-related offenses" means those crimes and offenses defined in An Act For the suppression of prostitution in the District of Columbia, approved August 15, 1935 (49 Stat. 651; D.C. Official Code § 22-2701 *et seq.*); section 2 of the Control of Prostitution and Sale of Controlled Substances in Public Places Criminal Control Act of 1981, effective December 10, 1981 (D.C. Law 4-57; D.C. Official Code § 22-2701.01); section 813 of An Act To establish a code of law for the District of Columbia, approved March 3, 1901 (31 Stat. 1322; D.C. Official Code § 22-2704); An Act In relation to pandering, to define and prohibit the same and to provide for the punishment thereof, approved June 25, 1910 (36 Stat. 833; D.C. Official Code § 22-2705 *et seq.*); An Act To enjoin and abate houses of lewdness, assignation, and prostitution; to declare the same to be nuisances; to enjoin the person or persons who conduct or maintain the same and the owner or agent of any building used for such purpose; and to assess a tax against the person maintaining said nuisance and against the building and owner thereof, approved February 7, 1914 (38 Stat. 280; D.C. Official Code § 22-2713 *et seq.*); and section 1 of An Act To confer concurrent jurisdiction on the police court of the District of Columbia in certain cases, approved July 16, 1912 (37 Stat.192; D.C. Official Code § 22-2722).

(b)(1) The Chief of Police may declare any public area a prostitution free zone for a period not to exceed 240 consecutive hours. The Chief of Police shall inform his commanders, the Mayor, and the Council of the declaration of a prostitution free zone.

(2) In determining whether to designate a prostitution free zone, the Chief of Police shall find the following:

OCT 2 7 2006

**ENROLLED ORIGINAL**

(A) The occurrence of disproportionately high arrests for prostitution or prostitution-related offenses, and calls for police service because of prostitution or prostitution-related offenses in the proposed prostitution free zone within the preceding 6-month period;

(B) Objective evidence or verifiable information that shows that disproportionately high incidence of prostitution or prostitution-related offenses are occurring on public space or public property within the proposed prostitution free zone; and

(C) Any other verifiable information from which the Chief of Police may ascertain whether the public health or safety is endangered by prostitution or prostitution-related offenses in the prostitution free zone.

(c) Upon the designation of a prostitution free zone, the MPD shall mark each block within the prostitution free zone by using barriers, tape, signs, or police officers that post or announce the following information in the immediate area of, and borders around, the prostitution free zone:

(1) A statement that it is unlawful for a person to congregate in a group of 2 or more persons for the purposes of prostitution or prostitution-related offenses within the boundaries of a prostitution free zone, and fail to disperse after being instructed to disperse by a uniformed officer of the MPD, or a non-uniformed officer of the MPD upon display of MPD identification, who reasonably believes the person is congregating for the purpose of engaging in prostitution or prostitution-related offenses;

(2) The boundaries of the prostitution free zone;

(3) A statement of the effective dates of the prostitution free zone designation; and

(4) Any other additional information the Chief of Police provides.

(d)(1) It shall be unlawful for a person to congregate in a group of 2 or more persons on public space or public property within the perimeter of a prostitution free zone established pursuant to subsection (b) of this section and thereafter to fail to disperse after being instructed to disperse by a uniformed officer of the MPD, or a non-uniformed officer of the MPD upon display of MPD identification, who reasonably believes the person is congregating for the purpose of engaging in prostitution or prostitution-related offenses.

(2) In making a determination that a person is congregating in a prostitution free zone for the purpose of engaging in prostitution or prostitution-related offenses, the totality of the circumstances involved shall be considered. Among the circumstances which may be considered in determining whether such purpose is manifested are:

(A) The conduct of a person being observed, including that such person is behaving in a manner raising a reasonable belief that the person is engaging or is about to engage in prostitution or prostitution-related offenses, such as:

(i) Repeatedly beckoning to, stopping, attempting to stop, or attempting to engage passers-by in conversation for the purpose of prostitution;

**ENROLLED ORIGINAL**

(ii)    Stopping or attempting to stop motor vehicles for the purpose of prostitution; or

(iii)    Repeatedly interfering with the free passage of other persons for the purpose of prostitution;

(B)    Information from a reliable source indicating that a person being observed routinely engages in or is currently engaging in prostitution or prostitution-related offenses within the prostitution free zone;

(C)    Physical identification by an officer of the person as a member of a gang or association which engages in prostitution or prostitution-related offenses;

(D)    Knowledge by an officer that the person is a known participant in prostitution or prostitution-related offenses; and

(E)    Knowledge by an officer that any vehicle involved in the observed circumstances is registered to a known participant in prostitution or prostitution-related offenses, or a person for whom there is an outstanding arrest warrant for a crime involving prostitution or prostitution-related offenses.

(e)    Any person who violates this section shall, upon conviction, be subject to a fine of not more than $300, imprisonment for not more than 6 months, or both.

(f)    The Attorney General for the District of Columbia, or his or her assistants, shall prosecute all violations of this section.

Sec. 105. Voyeurism.

(a)    For the purposes of this section, the term:

(1)    "Electronic device" means any electronic, mechanical, or digital equipment that captures visual or aural images, including cameras, computers, tape recorders, video recorders, and cellular telephones.

(2)    "Private area" means the naked or undergarment-clad genitals, pubic area, anus, or buttocks, or female breast below the top of the areola.

(b)    Except as provided in subsection (e) of this section, it is unlawful for any person to occupy a hidden observation post or to install or maintain a peephole, mirror, or any electronic device for the purpose of secretly or surreptitiously observing an individual who is:

(1)    Using a bathroom or rest room;

(2)    Totally or partially undressed or changing clothes; or

(3)    Engaging in sexual activity.

(c)(1)    Except as provided in subsection (e) of this section, it is unlawful for a person to electronically record, without the express and informed consent of the individual being recorded, an individual who is:

(A)    Using a bathroom or rest room;

(B)    Totally or partially undressed or changing clothes; or

(C)    Engaging in sexual activity.

OCT 2 7 2006

DISTRICT OF COLUMBIA REGISTER

**ENROLLED ORIGINAL**

Sec. 209.  An Act To establish a code of law for the District of Columbia, approved March 3, 1901 (31 Stat. 1321; D.C. Official Code § 22-2101 *et seq.*), is amended by adding a new section 802b to read as follows:

"Sec. 802b.  PENALTY FOR SOLICITATION OF MURDER OR OTHER CRIME OF VIOLENCE.

"(a)  Whoever is guilty of soliciting a murder, whether or not such murder occurs, shall be sentenced to a period of imprisonment not exceeding 20 years, a fine of $20,000, or both.

"(b)  Whoever is guilty of soliciting a crime of violence as defined by D.C. Official Code § 23-1331(4), whether or not such crime occurs, shall be sentenced to a period of imprisonment not exceeding 10 years, a fine of $10,000, or both.".

Sec. 210.  Section 9(a) of An act for the preservation of the public peace and the protection of property within the District of Columbia, approved July 29, 1892 (27 Stat. 324; D.C. Official Code § 22-1312(a)), is amended to read as follows:

"(a)  It shall not be lawful for any person or persons to make any obscene or indecent exposure of his or her person, or to make any lewd, obscene, or indecent sexual proposal in the District of Columbia under penalty of not more than $300 fine, or imprisonment of not more than 90 days, or both, for each and every such offense.".

*Amend § 22-1312*

Sec. 211.  An Act For the suppression of prostitution in the District of Columbia, approved August 15, 1935 (49 Stat. 651; D.C. Official Code § 22-2701 *et seq.*), is amended as follows:

(a)  Section 1 (D.C. Official Code § 22-2701) is amended to read as follows:

"Sec. 1.  It is unlawful for any person to engage in prostitution or to solicit for prostitution. The penalties for violation of this section shall be a fine of $500 or not more than 90 days imprisonment, or both, for the first offense, a fine of $750 or not more than 135 days imprisonment, or both, for the second offense, and a fine of $1,000 or not more than 180 days imprisonment, or both, for the third and each subsequent offense.".

*Amend § 22-2701*

(b)  Section 5(a) (D.C. Official Code § 22-2723(a)) is amended as follows:

(1)  Paragraph (1) is amended as follows:

(A)  The lead-in language is amended by striking the phrase "a violation of this act" and inserting the phrase "a violation of a prostitution-related offense" in its place.

(B)  Subparagraph (A) is amended by striking the phrase "a violation of this act" and inserting the phrase "a violation of a prostitution-related offense" in its place.

(2)  Paragraph (2) is amended by striking "violation of this act" and inserting the phrase "violation of a prostitution-related offense" in its place.

*Amend § 22-2723*

(c)  New sections 6 and 7 are added to read as follows:

"Sec. 6.  Impoundment.

Codification District of Columbia Official Code, 2001 Edition          19          West Group Publisher, 1-800-328-9378.

**8628**

OCT 2 7 2006

**ENROLLED ORIGINAL**

"(a)  Any vehicle used in furtherance of a violation of a prostitution-related offense shall be subject to impoundment pursuant to this section.

"(b)  Whenever a police officer has probable cause to believe that a vehicle is being used in furtherance of a violation of a prostitution-related offense, and an arrest is made for that violation, the police officer, other member of the Metropolitan Police Department, or duly authorized agent thereof shall:

"(1)  Arrange for the towing of the vehicle by the Department of Public Works, or other designee of the Mayor, to a facility controlled by the District of Columbia or its agents, as designated by the Mayor, or , if towing services are not immediately available, arrange for the immobilization of the vehicle until such time as towing services become available; and

"(2)  Provide written notice to the owner of record of the vehicle and to the person who is found to be in control of the vehicle at the time of the seizure conveying the fact of seizure and impoundment of the vehicle, as well as the right to obtain immediate return of the vehicle pursuant to subsection (d) of this section, in lieu of requesting a hearing.

"(c)  The notices to be given pursuant to this section shall be provided by hand delivery at the time of the seizure and impoundment of the vehicle to the person in control of the vehicle or to the owner of record of the vehicle. If the owner of record of the vehicle is not available to receive such notice at the time of seizure, then the notice shall be sent to each owner of record via registered mail, return receipt requested, to the address listed in the records of the Department of Motor Vehicles within 3 days of the time of the impoundment, excluding Saturdays, Sundays, and legal holidays.

"(d)  An owner, or a person duly authorized by an owner, shall, upon proof of same, be permitted to repossess or secure the release of the immobilized or impounded vehicle at any time (subject to administrative availability) by paying to the District government, as directed by the Department of Public Works, an administrative civil penalty of $150, a booting fee, if applicable, and all applicable towing and storage costs for impounded vehicles as provided by section 9(a)(6) of the Removal and Disposition of Abandoned and Other Unlawfully Parked Vehicles Reform Act of 2003, effective October 28, 2003 (D.C. Law 15-35; D.C. Official Code § 50-2421.09(a)(6)) ("Disposition Act"). Payment of such fees shall not be admissible as evidence of guilt in any criminal proceeding.

"(e)  An owner, or person duly authorized by an owner, shall be entitled to refund of the administrative civil penalty, booting fee, and 2 days' towing and storage costs by showing that the prosecutor dropped the underlying criminal charges (except for instances of *nolle prosequi* or because the defendant completed a diversion program), that the Superior Court of the District of Columbia dismissed the case after consideration of the merits, or that the case resulted in a finding of not guilty on all prostitution-related charges, or by providing a police report demonstrating that the vehicle was stolen at the time that it was subject to seizure and impoundment. If the vehicle had been stolen at the time of seizure and impoundment, a refund of all towing and storage costs shall be made.

OCT 2 7 2006

**ENROLLED ORIGINAL**

"(f)  An owner, or person duly authorized by an owner, shall be entitled to a due process hearing regarding the seizure of the vehicle.

"(g)  Vehicles seized and impounded under this section shall not be subject to replevin, but shall be deemed to be in the custody of the Mayor.

"(h)  Vehicles that remain unclaimed for 30 days may be disposed of pursuant to sections 7(c), (d), (e), and (f), 8, 9, and 10 of the Disposition Act; provided, that if the owner wants to claim the vehicle before it is auctioned, the owner must pay the administrative civil penalty imposed by subsection (d) of this section in addition to the amounts required in section 9 of the Disposition Act.

"(i)  The Attorney General for the District of Columbia, or his or her assistants, shall represent the District of Columbia in all proceedings under this section.

"(j)  The Mayor shall issue rules setting forth the process by which a refund shall be obtained timely pursuant to subsection (e) of this section. Until such rules are published in the District of Columbia Register, this section shall not be enforceable.'

"Sec. 7.  Anti-Prostitution Vehicle Impoundment Proceeds Fund.

"(a)  There is established a fund designated as the Anti-Prostitution Vehicle Impoundment Proceeds Fund ("Fund"), which shall be used for the purpose set forth in subsection (b) of this section. All funds collected from the assessment of civil penalties, booting, towing, impoundment, and storage fees pursuant to section 5, and any and all interest earned on those funds, shall be deposited into the Fund, and shall be continually available for the uses and purposes set forth in subsection (b) of this section, subject to authorization by Congress, except that any unused funds remaining in the Fund on September 30th of each fiscal year shall revert to the General Fund of the District of Columbia.

"(b)  The Fund shall be used solely to fund expenses directly related to the booting, towing, and impoundment of vehicles used in furtherance of prostitution-related activities, in violation of a prostitution-related offense.

"(c)  The Mayor shall submit to the Council, as part of the annual budget, a requested appropriation for expenditures from the Fund.".

Sec. 212.  Section 2 of the Control of Prostitution and Sale of Controlled Substances in Public Places Criminal Control Act of 1981, effective December 10, 1981 (D.C. Law 4-57; D.C. Official Code § 22-2701.01), is amended to read as follows:    Amend § 22-2701.01

"Sec. 2.  Definitions.

For the purposes of this act and An Act For the suppression of prostitution in the District of Columbia, approved August 15, 1935 (49 Stat. 651; D.C. Official Code § 22-2701 *et seq.*); Section 812 of An Act To establish a code of law for the District of Columbia, approved March 3, 1901 (31 Stat 1322; D.C. Official Code § 22-2704); An Act In relation to pandering, to define and prohibit the same and to provide for the punishment thereof, approved June 25, 1910 (36 Stat 833; D.C. Official Code § 22-2705 *et seq.*); An Act To enjoin and abate houses of

OCT 2 7 2006

DISTRICT OF COLUMBIA REGISTER

**ENROLLED ORIGINAL**

lewdness, assignation, and prostitution; to declare the same to be nuisances; to enjoin the person or persons who conduct or maintain the same and the owner or agent of any building used for such purpose, and to assess a tax against the person maintaining said nuisance and against the building and owner thereof, approved February 7, 1914 (38 Stat. 280; D.C. Official Code § 22-2713 *et seq.*); and section 1 of An Act To confer concurrent jurisdiction on the police court of the District of Columbia in certain cases, approved July 16, 1912 (37 Stat. 192; D.C. Official Code § 22-2722), the term:

"(1) "Arranging for prostitution" means any act to procure or attempt to procure or otherwise arrange for the purpose of prostitution, regardless of whether such procurement or arrangement occurred or a fee was paid.

"(2) "Domestic partner" shall have the same meaning as provided in section 2(3) of the Health Care Expansion Act of 1992, effective June 11, 1992 (D.C. Law 9-114; D.C. Official Code § 32-701(3)).

"(3) "Prostitution" means a sexual act or contact with another person in return for giving or receiving a fee.

"(4) "Prostitution-related offenses" means those crimes and offenses defined in this act and in the acts cited in the lead-in language of this section.

"(5) "Sexual act" shall have the same meaning as provided in section 101(8) of the Anti-Sexual Abuse Act of 1994, effective May 23, 1995 (D.C. Law 10-257; D.C. Official Code § 22-3001(8)).

"(6) "Sexual contact" shall have the same meaning as provided in section 101(9) of the Anti-Sexual Abuse Act of 1994, effective May 23, 1995 (D.C. Law 10-257; D.C. Official Code § 22-3001(9)).

"(7) "Solicit for prostitution" means to invite, entice, offer, persuade, or agree to engage in prostitution or address for the purpose of inviting, enticing, offering, persuading, or agreeing to engage in prostitution.".

Sec. 213.  Section 813 of An Act To establish a code of law for the District of Columbia, approved March 3, 1901 (31 Stat. 1322; D.C. Official Code § 22-2704), is amended to read as follows:   **Amend § 22-2704**

"Sec. 813.  Abducting or enticing child from his or her home for purposes of prostitution; harboring such child.

"(a)  It is unlawful for any person, for purposes of prostitution, to:

"(1)  Persuade, entice, or forcibly abduct a child under 18 years of age from his or her home or usual abode, or from the custody and control of the child's parents or guardian; or

"(2)  Secrete or harbor any child so persuaded, enticed, or abducted from his or her home or usual abode, or from the custody and control of the child's parents or guardian.

ENROLLED ORIGINAL

"(b)  A person who violates subsection (a) of this section shall be guilty of a felony and, upon conviction, shall be punished by imprisonment for not more than 20 years, or by a fine of not more than $20,000, or both.".

Sec. 214.  An Act In relation to pandering, to define and prohibit the same and to provide for the punishment thereof, approved June 25, 1910 (36 Stat. 833; D.C. Official Code § 22- 2705 *et seq.*), is amended as follows:

(a) Section 1 (D.C. Official Code § 22-2705) is amended to read as follows:   **Amend § 22-2705**

"Sec. 1.  (a)  It is unlawful for any person, within the District of Columbia to:

"(1)  Place or cause, induce, entice, procure, or compel the placing of any individual in the charge or custody of any other person, or in a house of prostitution, with intent that such individual shall engage in prostitution;

"(2)  Cause, compel, induce, entice, or procure or attempt to cause, compel, induce, entice, or procure any individual:

"(A)  To reside with any other person for the purpose of prostitution;

"(B)  To reside or continue to reside in a house of prostitution; or

"(C)  To engage in prostitution; or

"(3)  Take or detain an individual against the individual's will, with intent to compel such individual by force, threats, menace, or duress to marry the abductor or to marry any other person.

"(b)  It is unlawful for any parent, guardian, or other person having legal custody of the person of an individual, to consent to the individual's being taken, detained, or used by any person, for the purpose of prostitution or a sexual act or sexual contact.

"(c)(1)  Except as provided in paragraph (2) of this subsection, a person who violates subsection (a) or (b) of this section shall be guilty of a felony and, upon conviction, shall be punished by imprisonment for not more than 5 years, or by a fine of not more than $5,000, or both.

"(2)  A person who violates subsection (a) or (b) of this section  when the individual so placed, caused, compelled, induced, enticed, procured, taken, detained, or used or attempted to be so placed, caused, compelled, induced, enticed, procured, taken, detained, or used is under the age of 18 years shall be guilty of a felony and, upon conviction, shall be punished by imprisonment for not more than 20 years or by a fine of not more than $20,000, or both.".

(b) Section 2 (D.C. Official Code § 22-2706) is amended to read as follows:   **Amend § 22-2706**

"Sec. 2.  (a)  It is unlawful for any person, within the District of Columbia, by threats or duress, to detain any individual against such individual's will, for the purpose of prostitution or a sexual act or sexual contact, or to compel any individual against such individual's will, to reside with him or her or with any other person for the purposes of prostitution or a sexual act or sexual contact.

OCT 2 7 2006

**ENROLLED ORIGINAL**

"(b)(1)  Except as provided in paragraph (2) of this subsection, a person who violates subsection (a) of this section shall be guilty of a felony and, upon conviction, shall be punished by imprisonment for not more than 15 years or by a fine of not more than $15,000, or both.

"(2)  A person who violates subsection (a) of the section when the individual so detained or compelled is under the age of 18 years shall be guilty of a felony and, upon conviction, shall be punished by imprisonment for not more than 20 years or by a fine of not more than $20,000, or both.".

(c)  Section 3 (D.C. Official Code § 22-2707) is amended to read as follows:

"Sec. 3.  (a)  It is unlawful for any person, within the District of Columbia, to receive any money or other valuable thing for or on account of arranging for or causing any individual to engage in prostitution or a sexual act or contact.

> Amend
> § 22-2707

"(b)(1)  Except as provided in paragraph (2) of this subsection, a person who violates subsection (a) of this section shall be guilty of a felony and, upon conviction, shall be punished by imprisonment for not more than 5 years or by a fine of not more than $5,000, or both.

"(2)  A person who violates subsection (a) of this section when the individual so arranged for or caused to engage in prostitution or a sexual act or contact is under the age of 18 years shall be guilty of a felony and, upon conviction, shall be punished by imprisonment for not more than 20 years or by a fine of not more than $20,000, or both.".

(d)  Section 4 (D.C. Official Code § 22-2708) is amended by striking the word "spouse" and inserting the phrase "spouse or domestic partner" in its place.

> Amend
> § 22-2708

Sec. 215.  Section 1 of An Act To confer concurrent jurisdiction on the police court of the District of Columbia in certain cases, approved July 16, 1912 (37 Stat. 192; D.C. Official Code § 22-2722), is amended by striking the phrase "$1,000 or imprisoned not more than 180 days, or both." and inserting the phrase "$5,000 or imprisoned not more than 5 years, or both." in its place.

> Amend
> § 22-2722

Sec. 216.  The Anti-Sexual Abuse Act of 1994, effective May 23, 1995 (D.C. Law 10-257; D.C. Official Code § 22-3001 *et seq.*), is amended as follows:

(a)  Section 101 (D.C. Official Code § 22-3001) is amended as follows:

> Amend
> § 22-3001

(1)  A new paragraph (5A) is added to read as follows:

"(5A)  "Minor" means a person who has not yet attained the age of 18 years.".

(2)  Paragraph (10) is amended as follows:

(A)  Subparagraph (A) is amended by striking the phrase "marriage, or adoption" and inserting the phrase "marriage, domestic partnership, or adoption" in its place.

(B)  Subparagraph (C) is amended by striking the phrase "spouse or paramour" and inserting the phrase "spouse, domestic partner, or paramour" in its place.

(C)  Subparagraph (D) is amended to read as follows:



**U.S. Department of Justice**

Kenneth L. Wainstein
United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

### STATEMENT OF
### KENNETH L. WAINSTEIN
### UNITED STATES ATTORNEY
### for the
### DISTRICT OF COLUMBIA

**submitted on July 19, 2005 to the**

### COMMITTEE ON THE JUDICIARY
### COUNCIL OF THE DISTRICT OF COLUMBIA

**Bill 16-247**
**OMNIBUS PUBLIC SAFETY ACT OF 2005**

Thank you for inviting me to submit written testimony on the Omnibus Public Safety Act of 2005. My office has worked with the Mayor, the Office of the Attorney General and the Metropolitan Police Department in developing this important legislation, and I urge the Council to pass it. Bill 16-247 focuses on amendments to the criminal code. Along with the Mayor, the Attorney General, the Chief of Police and other criminal justice officials and agencies, we also are supporting crime prevention and offender rehabilitation initiatives. This bill is but one component of a comprehensive strategy to combat crime in the District of Columbia.

Law enforcement efforts in recent years have succeeded in reducing crime in our City, particularly violent crime. The homicide rate, for example, has receded from a peak of 482 murders in 1991, to 248 murders in 2003, to 198 in 2004. While this is a tremendous improvement, 198 homicides are still too many, as are the thousands of other crimes of violence that victimize the District's citizens and visitors each year.

Jersey) has had the highest rate of car theft in the nation, it is still too high. The two proposals that address this issue are modest, but could help reduce the rate of car theft even further.

Title XVII focuses more on professional car thieves and "chop shops" who alter or obliterate identification numbers that are affixed to motor vehicles and their major parts. It also will reach car theft rings operating in the District that are encouraging young people to steal cars for which they are paid a set price. The cars are then outfitted with new identification numbers, labels and registration documents and sold, often to persons engaging in the drug trade or other illegal activities. With such alterations, it is more difficult for law enforcement to determine whether a motor vehicle or one of its parts is stolen. With additional penalties for altering or removing the official identification numbers, such laws have been used successfully elsewhere in curbing the trade in stolen vehicles and we anticipate it would have the same effect here.

### Title XX – the "Anti-Prostitution Amendment Act of 2005"

The United States Attorney's Office has participated in an anti-prostitution working group, spearheaded by Councilmember Evans, for many years. Although it ebbs and flows, prostitution is a persistent problem in some areas of our city. Whether it is sex for money or sex for drugs, neighborhoods where prostitution flourishes suffer from traffic problems, sexual conduct in public, disposal of condoms and drug paraphernalia in residents' yards and public sidewalks and alleys, exposure of children to unseemly conduct, and an increase in the other kinds of criminal activity that accompanies prostitution. In a recent public forum, for example, a woman reported that not even motion lights deterred people from having sex in her yard in apparent sex-for-crack deals. Prostitution is not a victimless crime.

It is not a victimless crime in another sense. Many prostitutes are young and/or coerced into such activity by persons who profit from these activities without very much risk to themselves. Runaways are an easy target, as are foreign-born children and young people who are either lured to America by promises of a better life or who are enslaved and brought here. As a result, the United States Attorney's Office and the Office of the Attorney General for the District are spearheading a Human Trafficking Task Force in the District that focuses primarily on children, but also addresses adult victims of those who trade in human beings.

The proposed amendments to the prostitution laws are designed to achieve several objectives:

- to remove from the Code provisions that have been held insufficient to support a conviction or that are otherwise objectionable;

- to make prostitution itself a crime, in addition to soliciting for prostitution; and

- to increase penalties to a maximum of 20 years' imprisonment for those who use children or minors in the sex trade.[28]

The combination of these provisions should facilitate the investigation and prosecution of prostitution and pandering cases.

Although the age of consent in the District is generally 16, the bill makes it unlawful to pander or procure anyone under the age of 18 for the purposes of prostitution. It recognizes the vulnerability of these older teenagers, who are often not in a position to protect themselves from those who seek to exploit them. It is also consistent with federal law. 18 U.S.C. § 2423 (up to 30 years' imprisonment for interstate transportation of a person under 18 for purposes of prostitution).

---

[28] Recently we have prosecuted three cases, two in federal court and one in Superior Court, involving people who used children and minors for the purposes of prostitution. The girls ranged in age from 12 to 17. A maximum penalty of five years is too low for such exploitation of children.

This change will support the work of the Human Trafficking Task Force and we urge you to support it.

The Omnibus Act, like Section 5 of Bill 16-130, introduced by Councilmembers Patterson and Evans, repeals the offense of soliciting for lewd and immoral purposes. Thus, the Omnibus Act will reflect the current practice of prosecuting only those person who engage in or solicit sexual acts or contacts in exchange for a fee.[29]

We are continuing to work with the anti-prostitution working group on legislative proposals and look forward to testifying on the bill introduced by Councilmember Evans when it is brought before the Committee in the Fall.

### Title XXII – the "Privacy Protection Act of 2005"

A person who goes into a bathroom stall and locks the door, a teenage girl who changes into her bathing suit at a friend's pool house, a couple who engage in sexual relations in their own home, and a woman who wears a skirt in public all should be able to so without someone secretly observing or recording them. Yet, often using high-tech equipment, voyeurs invade the privacy of the most private and intimate of human activities. We have received complaints and have heard about complaints in other jurisdictions from persons who have been unknowingly observed in these situations. There are three kinds of invasions:

- A peephole or camera that is secretly installed in a manner that cannot be easily detected by the victim, and that is used to observe or to record people using the

---

[29] We oppose Section 2 of Bill 16-130, which would repeal a prohibition on proposals to to a person to expose his or her genitalia. This provision is used by MPD to arrest prostitutes who ask prospective customers to expose themselves as a way of testing whether the prospective customer is a police officer prior to offering or agreeing to engage in a sexual act for a fee. We would be pleased to work with the committee to come up with language that would achieve the other purposes of Section 2 without this adverse consequence.

**Government of the District of Columbia**



# Office of the Attorney General

Testimony of
# Robert J. Spagnoletti
Attorney General

*Public Hearing on*
*B16-247 the Omnibus Public Safety Act of 2005*
*B16-172 the Criminal Code Reform Commission*
*Establishment Act of 2005*
*B16-130 the Criminal Code Modernization*
*Amendment Act of 2005*

Committee on the Judiciary
Phil Mendelson, Chair
Council of the District of Columbia

May 31, 2005

Room 500
John A. Wilson Building
1350 Pennsylvania Avenue, NW
Washington, D.C.  20004
11:00 A.M.

offense. According to the DMV, it routinely receives conviction information from the court regarding adults, and it routinely seeks to revoke their licenses based on drug convictions. While this has not been the case for juveniles, the DMV has recently reached out to the Court in an effort to obtain the adjudication information so it can enforce the existing law.

Similar to a Virginia law, the Motor Vehicle and Drug Offense Driving Privileges Revocation and Disqualification Amendment Act of 2005 would expand the list of charges that could lead to a revocation of, or disqualify a person from obtaining, a driver's license. Specifically, a conviction for any of the following offenses could lead to license revocation:

- The commission of a drug offense.
- The commission of a stolen vehicle offense.
- Failure to yield to a pedestrian (D.C. Official Code § 50-2201.28).
- Failure to obey a traffic order while operating a motor vehicle (18 DCMR 2000).
- Fleeing police and any substantially identical successor law.

In addition, a person who does not have a driver's license, including a juvenile, may be delayed in obtaining one if they are convicted of one of the foregoing offenses or any of the following:

- Reckless driving (D.C. Official Code § 50-2201.04).
- Leaving after colliding – personal injury (D.C. Official Code § 50-2201.05(a)).
- Operating without a permit (D.C. Official Code § 50-1401.01(d)) or (D.C. Official Code § 50-1401.02(i)) (non-residents).
- Driving while intoxicated and driving under the influence (D.C. Official Code § 50-2201.05(b)(1)).
- Operating while impaired (D.C. Official Code § 50-2201.05(b)(2)).
- Operating vehicle after revocation or suspension of operator's Permit (D.C. Official Code § 50-1403.01).
- Speeding 30 miles per hour in excess of the limit (18 DCMR 2200.12).

Title XX – Anti-Prostitution Amendment Act of 2005
and Title XXI – Prostitution Free Zone Act of 2005

The Anti-Prostitution Amendment Act of 2005 and the Prostitution Free Zone Act of 2005 target the prostitution trade. Taken together, these Acts establish the crime of prostitution, enhance the penalties for persuading or compelling youth to become prostitutes, and enable the police to crack down on areas that are blighted by prostitution.

Currently, the act of prostitution is not a crime in the District. Prostitutes are charged with Solicitation of Prostitution.[18] The Anti-Prostitution Amendment Act of 2005 makes it unlawful for any person to engage in, or solicit for, prostitution and defines the terms

---

[18] Prostitutes are technically charged with inviting persons for purposes of prostitution. See D.C. Official Code § 22-2701.

"prostitution," "arranging for prostitution," and "soliciting for prostitution." The current law allows law enforcement to make arrests in the most common scenarios, i.e., where an undercover officer is solicited, or where an officer hears an explicit solicitation of someone else. However, in those cases where individuals are found engaging in the act of prostitution, after any negotiation for the act has taken place, there is currently no appropriate charge. In effect, there is a penalty for attempting to engage in prostitution, but not for successfully doing so. Thus, ironically, the law as currently written criminalizes the solicitation of an act that is not itself criminal. To resolve this, the Anti-Prostitution Amendment Act of 2005 establishes the crime of prostitution.

The Anti-Prostitution Amendment Act of 2005 also amends D.C. Official Code §§ 22-2704 and 22-2705 to clarify the enticing children for prostitution and pandering statutes and to raise the penalties in the pandering statutes to provide additional protections to the District's children. Although enticing or abducting a child from his or her home for purposes of prostitution is currently punishable by up to 20 years incarceration, pandering is currently punishable by only five years incarceration, a $1,000 fine, or both, without regard to whether the individual being prostituted is an adult or child. Under the Bill, a person who procures a child for the purposes of prostitution could also be punished by imprisonment for not more than 20 years or a fine of not more than $20,000, or both. Thus, the potential penalty for conduct that could be addressed by either statute will, as it should, be the same.

Title XXI of the Bill, the Prostitution Free Zone Act of 2005 would, under certain circumstances, authorize the Chief of Police to declare any public area as a prostitution free zone for a period not to exceed 120 consecutive hours. This Bill is modeled on the existing drug free zone statute which has proven effective in moving along would-be drug sellers and purchasers.[19]

Under the proposed enforcement scheme, the Chief of Police, after considering factors including the occurrence of prostitution-related arrests in an area and any homicides or crimes of violence related to prostitution that occurred in the proposed prostitution-free zone, may declare a specific area as a prostitution-free zone for up to five days. The Chief of Police must notify the District and Special Investigations Division Commanders, as well as the Council of the District of Columbia, of the declared prostitution-free zone and clearly mark each block within the area as a prostitution-free zone, notifying the public that it is an area where it is unlawful to congregate in a group of two or more for the purposes of prostitution, and to fail to disperse when ordered to do so. Officers are authorized under the Act to disperse persons congregating in groups of two or more for the purpose of engaging in prostitution or prostitution-related activities. Persons who fail to disperse as ordered would be subject to a misdemeanor arrest.

While no other jurisdiction has enacted similarly titled legislation, numerous states and municipalities, most notably California, Cal. Pen. Code § 653.22, have enacted provisions that prohibit loitering for the purpose of engaging or attempting to engage in prostitution. Maryland and Virginia, however, do not have such laws.

---

[19] See D.C. Official Code § 48-1001 et seq. In FY 2004, MPD instituted 140 drug free zones. The fact that only three people were charged with a violation of the Drug Free Zone Act during this period shows that the enforcement of the Act was effective. Would be drug trade participants left the drug free zones.

As I discussed earlier when addressing the Gang Recruitment Prevention Act of 2005, if a statute is to pass constitutional muster, it must give fair warning of the conduct that is prohibited; it must require an intent to violate the law; it must not afford the police unfettered discretion in determining whom to arrest; and it must not have a chilling effect on the exercise of constitutional rights such as freedom of association.

The Prostitution Free Zone Act addresses these issues by: 1) giving fair warning of the prohibited conduct by both posting the designated zone with notices of prohibited conduct and by mandating an officer's statement of the reason for any directive to disperse before any arrest can be made; 2) requiring that the prohibited loitering be for the specific purpose of prostitution or prostitution-related offenses; 3) limiting the discretion of the police by restricting the time a zone can be declared to 120 hours, tying the establishment of a zone to objective evidence that congregation for prostitution purposes was occurring therein, and requiring that officers use objective criteria to reach a reasonable determination that a person is congregating in a prostitution free zone for the purpose of engaging in prostitution or prostitution-related offenses; and 4) limiting any chilling effect upon a person's freedom of association by imposing a duty of observation upon the officer to determine if the suspected violator's purpose for being in the zone was for an apparent lawful reason.

### Title XXII – Privacy Protection Act of 2005

In this world of changing technology, prosecutors in the District and elsewhere find themselves challenged in applying old laws to new circumstances. Cellular phones with cameras, button size video cameras, the Internet, and a host of other technological advances have made it easier to invade someone's privacy and increasingly difficult to prevent such invasions.

For example, in the District of Columbia there are no criminal laws that prohibit someone from secretly filming up a woman's dress; yet doing so has become increasingly common in this age of miniature cameras. This practice has come to be known as "upskirting." Let me give you an example of such a case. Last summer my Office was referred a case where a man was caught surreptitiously filming up a woman's skirt at a concert. His goal was to display the pictures on the Internet. Although our neighboring state of Virginia has enacted a law to address this conduct,[20] which criminalizes the unlawful filming, videotaping or photographing of another – but the District has not. The most that we were able to charge this man with was disorderly conduct under D.C. Official Code §22-1321; a charge that seems woefully inadequate under the circumstances. Moreover, to prove this charge, the government is required to demonstrate that the defendant "act[ed] in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others" and that he did so "with the intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby."

In addition to Virginia, seven other states, including Maryland, have enacted laws that prohibit the filming or other recording of anyone in areas where a person has a reasonable expectation of privacy. The names of these laws include: Electronic Voyeurism; Invasion of

---

[20] Va. Code Ann. §18.2-386.1.

*Testimony of Robert J. Spagnoletti, Attorney General for the District of Columbia.*    Page 37
*May 31, 2005, before the Committee on the Judiciary*