UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | |
| ) | |
| 803 CAPITOL STREET, VALLEJO  ) | Civil No. 06-1710 (GK) |
| CALIFORNIA 94590,  ) | ECF |
| ) | |
| 1441 VAQUERO GLEN, ESCONDIDO  ) | |
| CALIFORNIA 92026,  ) | |
| ) | |
| APPROXIMATELY $276,645.97 IN  ) | |
| FUNDS FROM CHARLES SCHWAB  ) | |
| INVESTMENT ACCOUNTS 6884-3181,  ) | |
| 6884-3186 AND 6884-3192, AND  ) | |
| $135,442.60 IN STOCKS MAINTAINED  ) | |
| BY CHARLES SCHWAB, ALL HELD IN  ) | |
| THE NAME OF DEBORAH J. PALFREY,  ) | |
| ) | |
| $11,396.35 IN FUNDS FROM WELLS  ) | |
| FARGO ACCOUNTS 6952-139217  ) | |
| AND 005-9211417, HELD IN THE  ) | |
| NAME OF DEBORAH J. PALFREY,  ) | |
| ) | |
| AND  ) | |
| ) | |
| 413 GOLD KRUGERRANDS AND  ) | |
| OTHER GOLD AND SILVER COINS,  ) | |
| ) | |
| Defendants.  ) | |

**PLAINTIFF'S MOTION FOR A STAY**

Plaintiff, the United States of America, by its attorney, the United States Attorney for the District of Columbia, respectfully files this Motion to Stay the instant civil forfeiture proceeding for six months, pursuant to 18 U.S.C. § 981(g). In further support of this motion, the United States submits a Memorandum of Points and Authorities, and a proposed order.

Wherefore, the United States respectfully requests that its Motion to Stay should be GRANTED.

Respectfully submitted,

_/s/_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

_/s/_____
WILLIAM R. COWDEN, DC Bar #426301
Assistant United States Attorney
United States Attorney's Office
555 Fourth Street, N.W.
Washington, DC 20530
(202) 307-0258
(202) 514-8707 (fax)

## CERTIFICATE OF SERVICE

I certify that I caused the foregoing Motion to Stay to be served upon counsel of record via the Court's ECF system, on this 15th day of February 2007.

_/s/_____
WILLIAM R. COWDEN, DC Bar #426301
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,        ) | |
|                                  ) | |
|     Plaintiff,            ) | |
|                                  ) | |
| v.                               ) | |
|                                  ) | |
| 803 CAPITOL STREET, VALLEJO      ) | Civil No. 06-1710 (GK) |
| CALIFORNIA 94590,                ) | ECF |
|                                  ) | |
| 1441 VAQUERO GLEN, ESCONDIDO     ) | |
| CALIFORNIA 92026,                ) | |
|                                  ) | |
| APPROXIMATELY $276,645.97 IN     ) | |
| FUNDS FROM CHARLES SCHWAB        ) | |
| INVESTMENT ACCOUNTS6884-3181,    ) | |
| 6884-3186 AND 6884-3192, AND     ) | |
| $135,442.60 IN STOCKS MAINTAINED ) | |
| BY CHARLES SCHWAB, ALL HELD IN   ) | |
| THE NAME OF DEBORAH J. PALFREY,  ) | |
|                                  ) | |
| $11,396.35 IN FUNDS FROM WELLS   ) | |
| FARGO ACCOUNTS 6952-139217       ) | |
| AND 005-9211417, HELD IN THE     ) | |
| NAME OF DEBORAH J. PALFREY,      ) | |
|                                  ) | |
|     AND                       ) | |
|                                  ) | |
| 413 GOLD KRUGERRANDS AND         ) | |
| OTHER GOLD AND SILVER COINS,     ) | |
|                                  ) | |
|     Defendants.               ) | |
| _____  ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION TO STAY**

    NOW COMES plaintiff, the United States of America, and files this Motion to Stay the instant civil forfeiture proceeding pursuant to 18 U.S.C. § 981(g)(1). Title 18, United States Code, Section 981(g)(1) provides for the stay of a civil forfeiture case when a related criminal

investigation (or criminal case) exists.  Section 981(g)(1) states: "Upon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case."

Claimant's civil attorney has indicated that claimant opposes the Government's Motion to Stay.  Indeed, as shown herein, it appears that claimant's intent is to use civil discovery in order to undermine the Government's ability to investigate her criminal activity – before claimant becomes a party to the lawsuit by answering the Verified Complaint, and even while claimant asserts, through her filing of a motion to dismiss, that she believes discovery is not needed for resolution of this case.

In support of its Motion, the Government submits as follows:

1.      On October 3, 2006, the United States filed a Complaint against the two defendant real properties identified in the caption, alleging that the properties were subject to forfeiture to the United States under 18 U.S.C. § 981(a)(1) and (a)(3) in that the properties constitute property involved in money laundering and traceable to proceeds claimant obtained while violating Federal anti-prostitution racketeering laws.

2.      Claimant filed a claim on October 19, 2006, but she did not file an answer. Instead, claimant moved to strike the Government's Verified Complaint, asserting (under case law superseded by a statute) that the Complaint failed to provide claimant with adequate notice of her offenses.

3.      On November 22, 2006, the United States filed a First Amended Complaint.  In the First Amended Complaint, the Government added several defendants to the civil forfeiture

case, including personal property that law enforcement agents discovered when they executed a search warrant at claimant's home, and property agents seized from accounts at financial institutions. At the same time, the Government addressed claimant's previously-expressed concern that she did not know the basis for the Government's case. In the First Amended Complaint, the Government added details showing that, for years, claimant carefully managed a multi-State prostitution enterprise from her home in California.

4. On November 24, 2006, claimant filed a motion for return of property and an amended motion for return of property. But a provision of the statute upon which claimant based her motion, 18 U.S.C. § 983(f)(8), explicitly precluded the relief she was seeking in the motion. Nevertheless, claimant asked that the defendant funds be returned to her so that she could dissipate them.

5. On November 27, 2006, claimant filed a motion to compel a discovery conference – even though claimant had not filed an answer to the First Amended Complaint – or even an answer to the initial Complaint.

6. On November 28, 2006, claimant filed motions to dismiss the First Amended Complaint, and to suppress evidence. Claimant filed these two motions even before she filed a claim to the properties identified as the defendants in the First Amended Complaint. Claimant's motion to suppress was, by her admission, premature. Claimant told the Court that she thought discovery might establish that a Federal wire-tap statute might have been violated – even though she had no information about a wire-tap having occurred. The Government was forced to respond to, and then the Court to decide, a motion based on speculation.

7. Claimant filed a claim to the properties we sued in the First Amended Complaint

on December 4, 2006. Then, on December 5, 2006, claimant filed a premature, and in the Court's words, "totally frivolous" motion to have the Court deem her motion for return of property as conceded.

8. Although claimant still had not answered the Government's First Amended Complaint, on December 19, 2006, the Court issued an Order setting an Initial Scheduling Conference for January 17, 2007.

9. On December 27, 2006, claimant filed a supplemental memorandum concerning her motion for return of property, an amended motion for return of property, and a motion to reset the date of the Initial Scheduling Conference. The Government did not oppose rescheduling the January 17th conference and, the next day, the Court reset the Initial Scheduling Conference for January 10, 2007.

10. At the Initial Scheduling Conference, claimant's counsel indicated that he, and claimant, were aware that claimant was the subject of an ongoing criminal investigation. Nevertheless, he said, claimant wanted discovery to commence immediately – even though discovery was expensive, even though claimant had filed what she, presumably, thought was a pre-discovery dispositive motion, even though discovery would implicate claimant's right against self-incrimination under the fifth amendment, and even though the pleadings were still not closed. When the Court asked claimant's counsel whether he would be seeking information about matters that might have been occurring before a Grand Jury, claimant's counsel expressed an intent to seek the broadest discovery available.

11. At the Initial Scheduling Conference, the Government expressed several concerns, including: (1) that discovery was premature because it is typically framed by the issues set forth

in the pleadings, which remained open here; and (2) that Federal law did not allow claimants in civil discovery cases to use civil discovery to circumvent limitations placed on criminal discovery. Although the Government anticipated a need for a stay of the civil case, it had not moved to stay the civil case because, it explained, as of the January 2007 status conference, claimant had not requested any civil discovery from the Government.

12.     Instead of issuing a traditional case scheduling order, the Court ordered claimant to submit all written discovery requests to the Government by February 1, 2007, and then gave the Government until February 15, 2007, to review claimant's discovery requests before moving for a stay if claimant's discovery demands would adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case.

13.     Claimant served written discovery requests on the Government at the Initial Scheduling Conference. She followed up with deposition notices for Special Agent Troy Burrus, former United States Attorney Kenneth Wainstein, and former District of Columbia Attorney General Robert Spagnoletti.[1] She further noticed the deposition of a former Government official who, claimants' counsel reports, used claimant's full-service escort agency.[2] In the Interrogatories claimant posed, she requested that the Government "[i]dentify each person with their address and telephone number alleged to be a 'prostitute' in the First Amended Complaint." Likewise, claimant has sought the identify of "each person with their address and telephone

---

[1] According to claimant. Messrs. Wainstein and Spagnoletti testified before the D.C. Counsel about their belief in a need to strengthen anti-prostitution legislation. Presumably, claimant seeks additional opinion testimony from them. But such opinion testimony is neither admissible, nor likely to lead to relevant and admissible evidence.

[2] According to claimant's counsel, claimant seeks to explore this individual's experience with employees of claimant's full-service escort agency.

number alleged to be a 'customer' in the First Amended Complaint." The broadly worded discovery that claimant requests would require the Government to disclose the names of witnesses who may be cooperating with the Government, as well as matters that may be occurring before a Grand Jury.

14. Earlier this month, claimant followed up with an unsolicited e-mail that she sent directly to counsel for the Government in this case. In the e-mail, claimant expressed an apparent intent to make life miserable for those who used her escort agency's services, and/or for her former employees (in other words, the Government's potential witnesses) if the Government should persist in the instant case or any related criminal prosecution. In pertinent part, claimant wrote:

> As we all know though from life's adventures, there is always a flip side to every coin and surely in time, this other side will be reported in the more legitimate press. Again, I realize the anomalous nature of writing to you. And I apologize for any discomfort this may cause you. <u>Regardless, I simply cannot emphasize to you the terrible and quite unnecessary ramifications this case (civil and/or criminal) will set off, if permitted to advance for both sides</u>. The press will have a field day at each of our expense. Despite my aforementioned disclaimer not to comment upon my case, let me say this. The attached item rings more true than false when juxtaposed to my situation. . . . I am ferocious fighter when need be. Knowing my intense makeup as I do, far more than even my attorneys comprehend at this juncture and my belief in the solidness of my case, I can state with unequivocal certainty this situation will be a very long and unpleasant one; this despite, the sickening and humiliating additional lambasting I expect to receive in the media. Please reflect soberly upon my various thoughts, here. This is all I ask. –Sincerely, Jeane Palfrey

(Emphasis in original).

15. Although messages from claimant have been mixed, the Government understands

claimant to have indicated (though her criminal counsel) that, as the subject of a related criminal investigation, she would oppose any effort on the Government's part to obtain discovery from her through her deposition.³ But, because disagreements over fundamental facts appear to exist, the United States cannot proceed in this civil case with discovery so curtailed.

16.  In the instant case, a stay is also necessary to protect the government's criminal investigation/potential prosecution from the expansive scope of civil discovery. See United States v. All Funds Deposited in Account No. 200008524845, 162 F. Supp.2d 1325 (D. Wyo. 2001) (new version of § 981(g) [amended August 23, 2000] is broader than the old, permitting entry of stay in order to prevent interference with a criminal investigation; stay granted where civil discovery has a substantial potential of interfering with the ongoing criminal investigation). In her request for documents, claimant seeks "[a]ll documents related to this case." Such broad civil discovery will compromise the ability of law enforcement to gather confidential information.⁴ At this point, no good purpose would be served by facilitating claimant's apparent effort to expose and potentially embarrass former customers and co-workers of her "full-service"

---

³ Cf. United States v. Parcels of Land (Laliberte) , 903 F.2d 36, 42-46 (1ˢᵗ Cir. 1990) (claimant's insistence on asserting Fifth Amendment rights in civil proceeding could result in dismissal of claim). In her Opposition, should one materialize, claimant should be required to address the significant fifth amendment issue that was acknowledged at the Initial Scheduling Conference, as well as what claimant meant to imply when she promised "terrible . . . ramifications" should the Government not end its prosecution now.

⁴ "The Government has the right, even the responsibility in appropriate circumstances, to guard the identity of informants and others cooperating with the Government." United States v. Certain Real Property Located at 5137/5139 Central Avenue, 776 F. Supp. 1090, 1093 (W.D.N.C. 1991) (stay granted). In granting a civil stay, the court recognized that "should the identity of cooperating individuals be revealed, the damage to the Government -- and to the individuals -- would be permanent and irreparable." Id. at 1092. Accord United States v. $151,388.00 in United States Currency, et al., 751 F. Supp. 547, 550 (E.D.N.C. 1990) (stay warranted to preserve confidentiality of informants).

escort agency.

17.     Civil discovery also would provide improper opportunities for claimant to ascertain prematurely the details of any ongoing criminal investigation.[5]  The discovery claimant has requested thus far appears consistent with claimant's recent threat to harass potential witnesses whose identities remain secret under Rule 6(e) are through calculated public disclosures of former customers' and former co-workers' identities.

18.     Moreover, requiring case agents to respond to civil discovery also would burden the law enforcement officials who, according to claimant, are conducting a contemporaneous criminal investigation.  Indeed, claimant has attempted to notice the deposition of several law enforcement officials including:  (1) a current Assistant Attorney General who has no testimony that would be relevant to this case and who, at on time, ran the Office conducting the prosecution of this case; and (2) the case agent she believes is spearheading her criminal investigation.  Relieving a case agent from his investigatory duties so that he can review interrogatories and document requests, and respond to them, while also preparing for his deposition, will plainly burden the Government's efforts to conclude a criminal investigation with appropriate dispatch.

19.     Although a protective order is sometimes an appropriate mechanism for curtailing unnecessary or improper discovery, and is expressly referenced as an option at 18 U.S.C. §

---

[5] Courts recognize generally that "civil discovery may not be used to subvert limitations on discovery in criminal cases, by either the government or by private parties." McSurely v. McClelland, 426 F.2d 664, 671-72 (D.C. Cir. 1970). In Campbell v. Eastland, 307 F.2d 478 (5th Cir. 1962), cert. denied, 371 U.S. 955 (1963), for example, the court stated that in considering civil stays, judges need to be sensitive to the differences between the policies and objectives of the civil rules of discovery and the criminal discovery rules. Id. at 487.  The court specifically cautioned that a litigant should not be allowed to make use of liberal discovery procedures applicable to civil suits as a method of avoiding criminal discovery restrictions.

981(g)(3), as the court recognized in United States v. One Assortment of 73 Firearms, 352 F. Supp.2d 2 (D. Me. 2005), "a protective order cannot be imposed as an alternative to a stay [where its effect] would be to allow the claimants to pursue broad civil discovery while the Government would be substantially unable to do so." In 73 Firearms, both parties had proposed the stay that the court issued. In this case, claimant appears to want only one-sided civil discovery. As discussed above, the Government cannot conduct necessary civil discovery with its hands tied. Counsel for claimant have not indicated that claimant would be prepared to submit to a deposition if the Court were to permit civil discovery to proceed now (or, more properly, after denying claimant's motion to dismiss).

20.   In addition to staying this case for all of the fact-based reasons set forth above, civil discovery is also inappropriate for at least two procedural reasons. First, claimant has filed a motion to dismiss that constitutes, as a matter of law, a representation from her counsel that no discovery is needed because this Court can decide this case in claimant's favor solely on the basis of the facts alleged in First Amended Complaint, and the law. Were that not claimant's position, she should not have wasted this the Government's time responding to what she characterized as a dispositive, pre-discovery Rule 12(b) motion. Nor should claimant have wasted the Court's time considering it (twice). Second, claimant still has not filed an Answer. The scope of discovery in civil cases is established by the pleadings: the complaint, the answer(s), and any counter or cross claims. See Fed. R. Civ. P. 7 (describing the only permissible "pleadings"); Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party[.]") At this point, without an answer, neither the government, nor the Court, has a basis for deciding whether any of claimant's discovery requests are both

relevant, and not unduly burdensome. At this point, we do not know which, if any, of the First Amended Complaint's facts will be disputed, or whether other defenses exist.

WHEREFORE, the United States requests the stay of the instant civil forfeiture proceeding for six months – unless a criminal case is brought. Of course, should criminal proceedings that include criminal forfeiture allegations be instituted, the civil stay should remain in effect because criminal proceedings typically proceed on a faster track, and their outcome will likely determine the outcome of the property at issue in this civil case. The continued need for a stay should be revisited as circumstances warrant. A proposed order is attached.

## CONCLUSION

Based on the foregoing, the United States respectfully requests that the Court enter an order staying the forfeiture case for a period of six months.

Respectfully submitted,

_/s/_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

_/s/_____
WILLIAM R. COWDEN, DC Bar #426301
Assistant United States Attorney
United States Attorney's Office
555 Fourth Street, N.W.
Washington, DC 20530
(202) 307-0258

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**     ) | |
| )                                  | |
| **Plaintiff,**                ) | |
| )                                  | |
| v.                                 ) | |
| )                                  | |
| **803 CAPITOL STREET, VALLEJO**    ) | Civil No. 06-1710 (GK) |
| **CALIFORNIA 94590,**              ) | ECF |
| )                                  | |
| **1441 VAQUERO GLEN, ESCONDIDO**   ) | |
| **CALIFORNIA 92026,**              ) | |
| )                                  | |
| **APPROXIMATELY $276,645.97 IN**   ) | |
| **FUNDS FROM CHARLES SCHWAB**      ) | |
| **INVESTMENT ACCOUNTS 6884-3181,** ) | |
| **6884-3186 AND 6884-3192, AND**   ) | |
| **$135,442.60 IN STOCKS MAINTAINED** ) | |
| **BY CHARLES SCHWAB, ALL HELD IN** ) | |
| **THE NAME OF DEBORAH J. PALFREY,** ) | |
| )                                  | |
| **$11,396.35 IN FUNDS FROM WELLS** ) | |
| **FARGO ACCOUNTS 6952-139217**     ) | |
| **AND 005-9211417, HELD IN THE**   ) | |
| **NAME OF DEBORAH J. PALFREY,**    ) | |
| )                                  | |
| **AND**                            ) | |
| )                                  | |
| **413 GOLD KRUGERRANDS AND**       ) | |
| **OTHER GOLD AND SILVER COINS,**   ) | |
| )                                  | |
| **Defendants.**               ) | |

**O R D E R**

Upon consideration of the Government's Motion to Stay, the Opposition thereto, and the entire record herein, the Court finds that good cause appears for the stay requested by the Government pursuant to 18 U.S.C. § 981(g). The instant civil forfeiture proceeding is stayed for six months to permit resolution of the related criminal investigation. The Government may seek

a further stay of this case in order to resolve forfeiture of the defendant properties as part of any

criminal prosecution of claimant, if warranted.

_____
                GLADYS KESSLER
                United States District Judge