**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

         PLAINTIFF,

VS.

803 CAPITOL STREET VALLEJO, CALIFORNIA
94590 ET AL.,

         DEFENDANTS.
_____/

CASE NO.:1:06-CV-01710-GK

**CLAIMANT'S MOTION TO ENJOIN CRIMINAL PROCEEDINGS AGAINST HER**

Claimant, Deborah Jeane Palfrey, moves this Court to enjoin the criminal proceedings concerning her, and for grounds in support states:

**I.  THE COURT HAS THE ABILITY TO ENJOIN THE BRINGING OF CRIMINAL ACTIONS**

"Equity jurisdiction may be invoked when it is essential to the protection of the rights asserted, even though the complainant seeks to enjoin the bringing of criminal actions. *Philadelphia Company v. Stimson*, 223 U.S. 605, 621, *Truax v. Raich*, 239 U.S. 33, 37, *Terrace v. Thompson*, 263 U.S. 197, 214." *Shields v. Utah-Idaho Central R. Co,* 305 U.S. 177, 183 (1938).

**II.  DUE PROCESS REQUIRES A LEVEL PLAYING FIELD**

"Although the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . . it does speak to the balance of forces between the accused and his accuser." *Wardius v. Oregon*, 412 U.S. 470, 474 (1973).

Here, that "balance of forces" is patently absent here. First, the government has seized all of Claimant's assets through a pleading they admitted was defective when the government was

forced to amend the complaint.

Second, a "court may enjoin enforcement of unconstitutional criminal law when essential to protect right to earn a livelihood." *Truax v. Raich*, 239 U.S. 33, 38 (1915). Here, the constitutionality of the "prostitution statute" is clearly at issue and fully briefed before this Court. Hence, this Court must determine the constitutionality of that statute which is the sole *malum prohibitum* allegation against Claimant.

Last, no harm will accrue. The government has all Claimant's assets. The escort service operated by Claimant <u>ceased</u> operation in August 2006 – two months before the commencement of this action. Finally, Claimant has left the country twice and returned knowing that there were criminal allegations against her, hence any concern that she might flee would be misplaced.

### III.   *YOUNGER V. HARRIS* COMPELS ENJOINING THE CRIMINAL PROCEEDINGS

The clearest exposition of when a court should enjoin the executive branch from a criminal prosecution is found in *Younger v. Harris*, 401 U.S. 37 (1971).

Manifestly, "*Ex parte Young*, 209 U.S. 123, and following cases have established the doctrine that, when absolutely necessary for protection of constitutional rights, courts of the United States have power to enjoin state officers from instituting criminal actions." *Id*. at 45. Likewise, this Court can enjoin the federal prosecution for "the protection of constitutional rights".

Of course, an injunction may not issue "except under extraordinary circumstances, where the danger of irreparable loss is both great and immediate." *Id.* at 45. In detailing the scope of the "extraordinary circumstances" that would warrant an injunction, the Court in *Younger* stated:

> Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the

> special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution.

*Id*. at 46. Obviously, the issues presented this Court in Claimant's motion to dismiss and motion to suppress are of first impression. Nonetheless: "Other unusual situations calling for federal intervention might also arise, but there is no point in our attempting now to specify what they might be. It is sufficient for purposes of the present case to hold, as we do, that the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it, and that appellee Harris has failed to make any showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Id.* at 54.

### A. THE FIRST UNUSUAL CIRCUMSTANCE THAT WOULD CALL FOR EQUITABLE RELIEF

Here, Claimant has raised claims of vagueness and over breadth of the District of Columbia prostitution laws in her motion to dismiss, as were raised in *Thornhill v. Alabama*, 310 U.S. 88 (1940) in which an injunction against criminal proceedings was issued.

Likewise, in *Dombrowski v. Pfister*, 380 U.S. 479,(1965), the Court held that an injunction against the enforcement of certain state criminal statutes could properly issue under the circumstances presented in that case. *Dombrowski*, the complaint made substantial allegations that:

> the threats to enforce the statutes against appellants are not made with any expectation of securing valid convictions, but rather are part of a plan to employ arrests, seizures, and threats of prosecution under color of the statutes to harass appellants and discourage them and their supporters from asserting and attempting to vindicate the constitutional rights of Negro citizens of Louisiana. *380 U.S., at 482*.

This cases raises the question of vindication of sexual rights recently recognized as worthy of protection in *Lawrence v. Texas,* 539 U.S. 558 (2003) which held that the "right to liberty under the

Due Process Clause gives them the full right to engage in their conduct without intervention of the government. . . .It is a promise of the Constitution that there is a realm of personal liberty which the government may not enter. . . .The Texas statute furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual." *Id.* at 578.

Additionally, prosecutorial *estoppel* may be at issue given the federal prosecutors testimony that the District of Columba prostitution laws are unconstitutional while another arm of that office seizes Claimant's funds upon a claim that the District of Columbia laws are constitutional.

Thus, as the First Amended Complaint is due to be dismissed for the reasons of the *res* (i) not being the proceeds of an illegitimate business, and (ii) the constitutional infirmities of Chapter 27's vagueness and invasion of liberty interests as aforesaid, the criminal prosecution of Claimant must be stayed until those issues are determined.

### B.    THE SECOND UNUSUAL CIRCUMSTANCE THAT WOULD CALL FOR EQUITABLE RELIEF

Substantial and significant questions remain regarding how the evidence was obtained in this matter as addressed in the motion to suppress pending before this Court. Given that the vindication of privacy rights which would be occasioned if the motion is granted even in part, the criminal prosecution would necessarily be barred.

Plainly, limited expedited discovery as sought by Claimant in regarding the search warrant and obtaining of Claimant's financial information ought to be permitted during which a stay of the criminal proceedings would be appropriate. As more fully detailed in the motion to suppress, under the Electronic Communications Privacy Act at 18 U.S.C. §2515, whenever any wire or oral communication has been intercepted, no part of the contents of such communication and **no**

**evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court**, grand jury. . .". Pending resolution of this motion which would bar a criminal proceeding against Claimant, such proceedings must be stayed.

### C. THE THIRD UNUSUAL CIRCUMSTANCE THAT WOULD CALL FOR EQUITABLE RELIEF

The statute of limitations in a forfeiture matter is governed by 18 U.S.C. § 981(d) which refers to 19 U.S.C. §1602 *et seq*. At 19 U.S.C. § 1621(1) it is provided, in relevant part, that: "in the case of an alleged violation of section 1592 or 1593a of this title, no suit or action . . .may be instituted unless commenced within 5 years after the date of the alleged violation."

Hence, the Amended Complaint could only seek forfeiture of Claimant's funds received within the last five years since the filing of the initial complaint, to wit: post- October 3, 2001. Significantly, the Amended Complaint recognizes and alleges that the funds seized are the result of escort activity that dates back to 1993. "Investigation reveals that from about 1993 until in or about August 2006, Palfrey . . .operated a prostitution business." (Amended Complaint, ¶10).

Thus in rough terms, only 5/13th of the seized funds are allegedly available for forfeiture as the remaining 9/13th of the seized funds were earned prior to the five year statute of limitations period.

Hence, given the fact that this matter will – if it is to be fairly tried – require the significant expense of acquiring the documentary and testimonial evidence of: (i) the some one hundred (100) escorts who worked for Claimant during the thirteen years of operation, (ii) the hundreds of customers identifiable by Claimant who used her escort service for "legal" sexual activities and (iii) the vice squads of at least eleven different law enforcement agencies who during the thirteen (13)

that Claimant's escort service was in operation not <u>once</u> found evidence warranting the arrest of a single escort of Claimant, the pre-emptive seizure of Claimant's assets on dubious grounds and upon patently illegal searches results in a playing field which is no longer level for this case.

Moreover, this Court too has failed to rule upon the Congressionally-mandated motion to return property which likewise would permit Claimant to proceed on a more equal footing with the government if her seized property is returned to her in whole or in part. Simply stated, for this Court to ignore its Congressionally-imposed duty to the effect of further tilting the playing field towards the government in itself implicates due process notions of "fairness" as the Court implicitly is favoring the government.

Simply stated, Claimant will not be able to mount the vigorous defense she is entitled to without access to the funds which plainly belong to her.

### IV.    CONCLUSION

In sum, to permit the government to destitute Claimant and threaten her with draconian criminal charges while the significant constitutional issues remain outstanding, is to permit such overreaching as to implicate due process concerns. Accordingly, this Court must act in equity to stop this basic unfairness and protect Claimant from the abuses of the criminal system.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the served pursuant to LcvR 5.4(d) upon William R. Cowden, Assistant United States Attorney, Criminal Division, Asset Forfeiture Unit, 555 4th St., N.W., Room 4818, Washington, D.C. 20530 this February 21, 2007.

**MONTGOMERY BLAIR SIBLEY**
CENTER FOR FORFEITURE LAW
50 West Montgomery Avenue, Suite B-4
Rockville, MD 20850-4216
Voice/Fax:   (202) 478-0371
E-mail:   mbsibley@civilforfeiture.com


By:   /s/ Montgomery Blair Sibley
        Montgomery Blair Sibley
        D.C. Bar #464488