UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

               PLAINTIFF,

VS.

803 CAPITOL STREET VALLEJO, CALIFORNIA
94590, ET AL.,

           DEFENDANTS.
_____/

CASE NO.:1:06-CV-01710-GK

**CLAIMANT'S MOTIONS TO LIFT STAY, DISMISS FOR OUTRAGEOUS GOVERNMENT CONDUCT AND FOR EVIDENTIARY HEARING THEREON**

Claimant, Deborah Jeane Palfrey, by and through her undersigned counsel, moves to (i) lift the stay in this matter so that (ii) the Court can consider Claimant's Motion to Dismiss For Outrageous Government, and states:

I.     **LIFT THE STAY**

Plainly, this Court can lift the stay in this matter for good cause shown. As demonstrated below, notwithstanding the equities which argued for the stay in this case, the subsequent behavior of federal agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a forfeiture. As such, this Court should not deny attention to this matter by maintaining a stay to prevent exposition of the facts detailed *infra*.

II.    **FACTS**

Claimant Deborah Jeane Palfrey has a seventy-five (75) year old mother, Blanche Palfrey, who is in frail health and in the early stages of forgetfulness living in Florida.

In or about October 2006, Blanche spoke with undersigned counsel about the seizure of her daughter Deborah Jeane Palfrey's assets. At that time undersigned counsel offered to represent her

in case any investigation of Blanche was undertaken by the government. Blanche accepted that offer and undersigned counsel became her attorney. Blanche was instructed by undersigned counsel not to speak with anyone about this matter but refer all questions to him. Blanche has consulted with undersigned counsel repeatedly during the intervening months. (Blanche Palfrey Affidavit, ¶1).

On June 4, 2007, at approximately 8:30 p.m., two people knocked on Blanche's residence door and identified themselves as Maria Couvillion of the U.S. Postal Service and Troy Burrus of the Internal Revenue Service and asked if they could speak with her. Having a weak heart and given the late hour, Blanche agreed, as she didn't want to get into an argument. (Blanche Palfrey Affidavit, ¶2)

The two agents came into Blanche's house and questioned her for 30-45 minutes. During that questioning, Blanche told them that they should speak to the undersigned counsel, Mr. Sibley. In response, **both agents indicated that they already had spoken with Mr. Sibley and that she should speak with them**. (Blanche Palfrey Affidavit, ¶3)

Thereafter, they asked Blanche questions and she answered, regarding her daughter's escort services and Blanche's finances. They did not tape record the interview to Blanche's knowledge, but were making written notes. (Blanche Palfrey Affidavit, ¶4).

Two additional facts are significant. First, Claimant was with her mother for the three days preceding this visit by Federal Agents to Blanche Palfrey and had left only minutes before the Federal Agents appeared at her door raising the specter that the Agents waited until Claimant had left in order to confront Claimant's mother when she was along.

Second, this Court must take judicial notice that it was scheduled to hold a hearing on the temporary restraining orders on **June 5, 2007**, the following day. As the government has stated that

-2-

they have been investigating Claimant since **June 2004** (First Amended Complaint for Forfeiture in Rem, D.E. #10, ¶9[1]), it was no coincidence that they chose **June 4th** to pay a late-night visit to Claimant's elderly, ill and confused mother.

## III.    LAW APPLICABLE

"[A] forfeiture proceeding is quasi-criminal in character.    Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law." *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 700 (1965).    Accordingly, the same protections against government misconduct present in a criminal proceeding must be extended in a civil forfeiture proceeding as well.

The Supreme Court long ago recognized that impartiality in criminal cases requires that "[b]etween [the accused] and the state the scales are to be evenly held." *Hayes v. Missouri*, 120 U.S. 68, 70 (1887).    Such a policy dates back to the Bill of Rights, which was "designed to level the playing field between the defendant and the state," Susan Bandes, *Empathy, Narrative, and Victim Impact Statements*, 63 U. Chi. L.Rev. 361, 402 (1996), and indeed the policy has animated landmark constitutional decisions, see, e.g., *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (stating that "[s]ociety wins not only when the guilty are convicted but when criminals trials are fair")*; Miranda*, 384 U.S. at 460,(stating that privilege against self-incrimination is required, inter alia, "[t]o maintain a fair state-individual balance")(citation and internal quotations omitted). Simply put, ours is an adversarial legal system, and implicit in this system, which pits the government against the Claimant in a court

---

[1]      ¶9  "In about **June 2004**, investigators with the Internal Revenue Service and the United States Postal Service began a joint investigation of a business enterprise involving illegal prostitution (hereafter "prostitution business"), that Deborah J. Palfrey operated in Washington, D.C., Maryland, Virginia, and California."

of law, is the notion of fair play.

The doctrine of outrageous government conduct stems from a statement in *United States v. Russell*, 411 U.S. 423 (1973), a case involving the entrapment defense. The Supreme Court found that the defendant in *Russell* was predisposed to commit the crime at issue, and therefore was not entrapped. However, the Court noted that it might "some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Id.* at 431-32, 93 S.Ct. 1643.

In *United States v. Morrison*, 449 U.S. 361 (1981), the Supreme Court leaves open the possibility of a dismissal for a Sixth Amendment violation in the event that facts show "demonstrable prejudice, or substantial threat thereof." Here, the substantial threat of demonstrable prejudice exists by the threat upon the Claimant and her mothers' ability to confer with counsel and to assist in the preparation of their defenses.

Moreover, Congress has recognized the need for legislative protection of these basic rights against government encroachment in two particular statutes. First, 18 U.S.C. §241 states: "If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State . . .in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States . . . They shall be fined under this title or imprisoned not more than ten years, or both . . ."

Likewise, under 18 U.S.C. §1001 "Statements or Entries Generally (a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully - (1) falsifies,

conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation . . .shall be fined under this title, imprisoned not more than 5 years." Clearly, both statutes imply a private right of action.[2]

### III.    REQUEST FOR EVIDENTIARY HEARING

While Claimant does not suggest that any member of the prosecution team had any hand in nor was aware of the late-night visit by the Federal Agents to Claimant's mother, or that the prosecutors were privy to plans for such a visit, such a contention is not immediately dismissible as fantastic.

---

[2]    In order to determine whether 18 U.S.C. §241 and §1001 are statutes "under which such action against an individual is otherwise authorized", the four factor test enunciated in *Cort v. Ash*, 422 U.S. 66, 78 (1975), is applicable. In *Cort*, the Court held:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,' *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916) (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? *See, e.g., National Railroad Passenger Corp. v. National Assn. of National Railroad Passengers*, 414 U.S. 453, 458, 460, 94 S.Ct. 690, 693, 694, 38 L.Ed.2d 646 (1974) (Amtrak). Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? *See, e.g., Amtrak, supra; Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 423, 95 S.Ct. 1733, 1740, 44 L.Ed.2d 263 (1975); *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law.

Applying these four factors to 18 U.S.C. §241 and §1001 it is clear that an action against the agents for violation of these sections is authorized.

The visit was conducted by Government representatives who have been working closely with prosecutors in this matter since last October.

The Visit was made in preparation of the both this civil and the related criminal case, and as such is a blatant invasion of both Claimant and her mother's Fifth Amendment right to due process of law and their Sixth Amendment right to effective assistance of counsel. Assuming either that incriminating statements were made by Blanche Palfrey, or, more likely, that there was <u>no</u> prosecutorial basis for the Visit and was simply an intimidation tactic, a strong basis for a motion to dismiss for governmental misconduct exists and requires a hearing concerning this claim.

At the hearing Claimant will establish that there was no coincidence between the date of the visit and the hearing before this Court the next day. Moreover, examination of the evidence will raise the specter to this Court that the federal agents knowingly misrepresented to Blanche Palfrey that they had consulted with undersigned counsel and that she was free to speak with them – a blatant lie.

Finally, at the hearing, Claimant will produce evidence that there is a pattern and practice of the United States Government to go after the parents of defendant and/or claimants who will not accept the government's offer to settle but instead vigorously litigate specious charges that implicate governmental incompetence, malfeasance and/or misfeasance.

### III.   CONCLUSION

Based upon the forgoing, "fair play" is <u>not</u> being done in this matter. Accordingly, Claimant asks this Court for the relief  – and to preserve the record for subsequent review if necessary, an evidentiary hearing  – of imposition of a stern rebuke and a repressive sanction. That sanction should be dismissal of this cause.

### CERTIFICATE OF CONSULTATION

I HEREBY CERTIFY that on June 14, 2007, I consulted with William R. Cowden, counsel for the Plaintiff regarding the relief requested in this motion and he opposed the relief requested in this motion.

### CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the served pursuant to LcvR 5.4(d) upon William R. Cowden, Assistant United States Attorney, Criminal Division, Asset Forfeiture Unit, 555 4th St., N.W., Room 4818, Washington, D.C. 20530 this June 14, 2007.

> **MONTGOMERY BLAIR SIBLEY**
> CENTER FOR FORFEITURE LAW
> 1629 K Street, Suite 300
> Washington, D.C. 20006
> 202-508-3699
> 202-478-0371 Fax
> mbsibley@civilforfeiture.com
> www.civilforfeiture.com
>
> By:   /s/ Montgomery Blair Sibley
>          Montgomery Blair Sibley
>          D.C. Bar #464488

**AFFIDAVIT**

Blanche Palfrey, pursuant to the authority of 28 U.S.C. §1746 and under penalty of perjury states:

1.    In or about October 2006, I spoke with Montgomery Blair Sibley about the seizure of my daughter Deborah Jeane Palfrey's assets. At that time he offered to represent me in case any investigation of me was undertaken by the government. I accepted that offer and he became my attorney. I was instructed by him not to speak with anyone about this matter but refer all questions to him. We have spoken several times since last fall.

2.    On June 4, 2007, at approximately 8:30 p.m., two people knocked on my residence door and identified themselves as Maria Couvillion of the U.S. Postal Service and Troy Burrus of the Internal Revenue Service and asked if they could speak with me. I have a weak heart and given the late hour, I agreed, as I didn't want to get into an argument.

3.    They came into my house and questioned me for 30-45 minutes. During that questioning, I told them that they should speak to Mr. Sibley. In response, both agents indicated that they already had spoken with Mr. Sibley and that I should speak with them.

4.    Thereafter, they asked me questions and I answered, regarding my daughter's escort services and my finances. They did not tape record the interview to my knowledge, but were making written notes.

**I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.**

Date: 6-8-07                    *Blanche Palfrey*
                               Blanche Palfrey

**A FALSE STATEMENT OR CLAIM MAY SUBJECT A PERSON TO PROSECUTION UNDER 18 U.S.C. §1001 AND/OR §1621 AND IS PUNISHABLE BY A FINE AND UP TO FIVE YEARS IMPRISONMENT.**

2
