UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    PLAINTIFF,

vs.

803 CAPITOL STREET VALLEJO, CALIFORNIA 94590, ET AL.,

    DEFENDANTS.
_____/

CASE NO.:1:06-CV-01710-GK

CLAIMANT'S REPLY TO PLAINTIFF'S RESPONSE TO CLAIMANT'S MOTIONS TO LIFT STAY, DISMISS FOR OUTRAGEOUS GOVERNMENT CONDUCT AND FOR EVIDENTIARY HEARING THEREON

Claimant, Deborah Jeane Palfrey, by and through her undersigned counsel, replies to Plaintiff's response to Claimant's motion to (i) lift the stay in this matter so that (ii) the Court can consider Claimant's Motion to Dismiss For Outrageous Government, and states:

**I. PLAINTIFF MISUNDERSTANDS THE BASIS OF A MOTION TO DISMISS FOR OUTRAGEOUS GOVERNMENT CONDUCT**

Plaintiff first argues to this Court that "Blanche Palfrey is not a defendant, a claimant, or a party in any of her daughter's various legal proceedings, and Deborah Jeane Palfrey has no standing to seek to lift the stay or dismiss the pending civil case, based on an alleged violation of her mother's Sixth Amendment right to counsel." (Plaintiff's Response, p. 4). Next, the Plaintiff argues: "For such an extreme remedy as dismissal, the Supreme Court requires a showing of substantial prejudice, something entirely missing from Claimant's Motions." (Plaintiff's Response, p. 5).

Both arguments ground their authority upon a failure of Claimant to allege a Sixth Amendment violation. Here, however, it is Fifth Amendment due process concerns, <u>not</u> Sixth Amendment rights, that dictate that this Court dismiss this cause as a punishment of the government for its outrageous behavior. As noted before, in *United States v. Russell*, 411 U.S. 423 (1973), the

-1-

Court noted that it might "some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Id*. at 431-32.

Here, Claimant makes just such an allegation of outrageous conduct by law enforcement officials so as to bar the government from invoking judicial process to obtain a conviction or forfeiture.

Most notably, Plaintiff did <u>not</u> deny any of the allegations of the affidavit nor proffer any evidence to refute those allegations. Moreover, Claimant has alleged – and Plaintiff did <u>not</u> deny – that there is pattern and practice of the Department of Justice to intimidate family members of those accused of criminal behavior when a plea is not promptly entered.

Simply put, this Court can condone this sort of behavior by ignoring these allegations of jack-booted tactics and refusing a full airing of the facts in this matter <u>or</u> it can, as its Article III obligations demand, act as the watch dog on executive excess clearly contemplated in the Constitution.

The burden is now on this Court.

## II.   UNDERSIGNED COUNSEL HAS COMMITTED NO ETHICAL BREACHES

Lacking any substantive response to Claimant's motion, Plaintiff's counsel once again seeks to invoke *ad hominem* arguments against Claimant's counsel in hopes of diverting this Court's attention from the significant improper intimidation tactics of the Plaintiff.

In particular, Plaintiff's counsel states: "In this context, by offering to represent his client's mother, if she should become an investigative target, Mr. Sibley must have forged himself a considerable ethical conundrum. Even more remarkably, according to Blanche Palfrey's Affidavit,

Mr. Sibley apparently then further advised his client's mother that, if she became a target, he would become her attorney, too, and she should "not speak with anyone about this matter." That advice marks a beeline for the border between dubious ethics and obstruction of justice." (Plaintiff's Response, p. 4, f/n #5).

Patently, D.C. Bar Rule 1.7(a), attached, creates a nonconsentable conflict where a lawyer seeks to represent two clients taking adverse positions in the same "matter." Here, no such "adverse position" is known to undersigned counsel. As both clients have consented to this mutual representation at this time, no such "ethical conundrum" exists.

Accordingly, this Court should *sua sponte* sanction Plaintiff's counsel for such reckless accusation of potentially criminal behavior by undersigned counsel. As with the allegations of outrageous government conduct above, this Court's silence in this regard is paramount to acquiescence to behavior by government officials which is obnoxious to due process of law.

**III.   CONCLUSION**

Based upon the forgoing, "fair play" is <u>not</u> being done in this matter. Accordingly, Claimant asks this Court for the relief – and to preserve the record for subsequent review if necessary, an evidentiary hearing – of imposition of a stern rebuke and a repressive sanction. That sanction should be dismissal of this cause.

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and accurate copy of the served pursuant to LcvR 5.4(d) upon William R. Cowden, Assistant United States Attorney, Criminal Division, Asset Forfeiture Unit, 555 4th St., N.W., Room 4818, Washington, D.C. 20530 this July 3, 2007.

                                      **MONTGOMERY BLAIR SIBLEY**
                                      CENTER FOR FORFEITURE LAW
                                      1629 K Street, Suite 300
                                      Washington, D.C. 20006
                                      202-508-3699
                                      202-478-0371 Fax
                                      mbsibley@civilforfeiture.com
                                      www.civilforfeiture.com

                            By:   /s/ Montgomery Blair Sibley
                                      Montgomery Blair Sibley
                                      D.C. Bar #464488



Home > For Lawyers > Ethics > Legal Ethics > Opinions

# Opinion 232

### Multiple Clients/Criminal Matter

After full disclosure and consent by the client, a lawyer may represent a witness in a criminal matter who desires to assert his Fifth Amendment right not to testify even though a suspect in the criminal matter is being represented in another matter by the same firm. The lawyer may not, however, bargain with the government to obtain a benefit by giving testimony adverse to the firm's client without obtaining the consent of both clients and otherwise complying with Rule 1.7(c).

### Applicable Rules

- 1.7(b) (Conflicts of Interest)
- 1.10(a) (Imputed Disqualification)
- 1.16(a) (Withdrawal)
- 4.2(a) (Contact With Person Represented in a Matter by Other Counsel)

### Inquiry

The Committee has been asked to decide whether a lawyer may represent a witness in a criminal homicide case, when the inquirer's partner has been representing client one, who is a principal suspect in the killing, in connection with two unrelated weapons possession charges. Client one is represented in the murder case by other counsel. We are told that the inquirer's client, client two, and the murder victim were riding in a car with three others, including client one, when the victim got out of the car, was chased by the car, and was ultimately killed by persons who were in the car.

   Client two was originally charged in the homicide case, but the charge against him was dismissed at the initial hearing. The inquirer states that the government has decided not to charge client two because he was an innocent bystander in a murder planned and executed by client one and others. At the time of his arrest, and before client two was represented by counsel, he gave a statement to police which inculpated client one. The inquirer and the prosecutor state that the prosecutor would like to call client two to the grand jury to give testimony against client one. Client two will not testify unless he is given immunity and may not cooperate even then.

   The inquirer states that he explained his partner's representation of client one to both client two and his family, and that each wished to proceed with the inquirer notwithstanding the potential conflict. In addition, the inquirer informed the prosecutor of the potential conflict and has kept the fee received from client two in escrow pending resolution of this matter. The inquirer's partner has not communicated with client one, who has been represented for some time by other counsel in the homicide matter and in other unrelated matters. The inquirer states that he and his partner will not share information about their respective clients, and this representation has been made to the prosecutor and to the court.

   The inquirer asks three questions: (1) is there a per se conflict of interest which precludes representation of client two; (2) should the inquirer withdraw from the representation of client two and, if so, must his partner withdraw from further representation of client one; and (3) how should client one be contacted for his objection or consent to the inquirer's representation of client two?

### Analysis

### 1. Disqualification from Representation of Client Two

Rule 1.10(a) of the District of Columbia Rules of Professional Conduct prohibits lawyers associated in a firm from representing a client if any lawyer in the firm, practicing alone, would be barred from representing both clients by Rules 1.7, 1.8(b), 1.9, or 2.2. To analyze whether the inquirer has a prohibited conflict, therefore, the inquirer and his partner must be treated as one.[1] See Rule 1.10(a); Comment [17] to Rule 1.7.

Rule 1.7(a) creates a nonconsentable conflict where a lawyer (or under Rule 1.10(a), a law firm) seeks to represent two clients taking adverse positions in the same "matter." Rule 1.7(b) creates four consentable conflicts in defined circumstances in which multiple representation may infringe a lawyer's duties of loyalty and zealous representation. Rules 1.7(a) and 1.7(b)(1) each deal with the situation in which a position to be taken for one client is adverse to a position to be taken for another client "in the same matter." They differ in that such a conflict is generally consentable under Rule 1.7(c) if the second client is represented by a different lawyer or firm.[2] Since client one is represented by separate counsel in the homicide case, only Rule 1.7(b)(1) is applicable here.

Applying Rule 1.7(b)(1) requires consideration of whether representation of client two, who is currently dismissed from the murder case, with respect to his grand jury testimony is (1) adverse to client one and (2) occurs in "the same matter" as the criminal trial against client one.[3] On the first issue, the inquirer states that client two will not testify without immunity (and may not testify then). In addition, client two apparently does not want to haggle with the prosecution to obtain immunity. Since client two's decision to invoke his Fifth Amendment rights is not adverse to client one, there does not at the present appear to be a disqualifying adversity of interests under Rule 1.7(b)(1).

There is always a great risk in criminal matters, however, that positions can change as the prosecutor gathers evidence, winnows witnesses from targets, and selects potential charges.[4] Recognizing this, we note that should client two later decide that it is in his interest to bargain his testimony against client one for some advantage, then there would be sufficient adversity between client two and client one to require disqualification of the inquirer and his firm, absent consent under Rule 1.7(c), if such bargaining would occur "in the same matter."

The term "matter" is not precisely defined in the Rules. Outside of an "on-the-record adversary proceeding," the bounds of a "matter" become difficult to discern. See Comment [3] to Rule 1.7. The bounds given to the concept of a "matter" should, we believe, be informed by the purpose to be achieved by Rule 1.7. Comment [3] to Rule 1.7 implies that the problem to be avoided under the Rule is "seeking a result to which another client is opposed" from the same decision maker. See id. Accordingly, where counsel seeks to gain an advantage for one client by offering to trade testimony inculpating a second client in the same criminal episode, such bargaining seeks, or at least facilitates, "a result to which [the second] client is opposed," and such bargaining should be considered to occur in a "matter" common to both clients. Should such bargaining take place, therefore, the inquirer and his firm would be disqualified from representing client two absent the consent of both clients one and two under Rule 1.7(c).[5]

Rule 1.7(b)(2) is also implicated by the facts of this inquiry. That rule prohibits representation of a client when such "representation will be or is likely to be adversely affected by representation of another client." When one lawyer represents multiple clients who may be able to inculpate each other in the same criminal episode, the government has frequently moved for disqualification on the ground that such representation creates two distinct conflicts. First, the lawyer's concern for one client may lead him to counsel a second to refuse to testify in circumstances where such refusal is not warranted by the Fifth Amendment (or otherwise) and may cause the second client to be held in contempt.[6] Second, the lawyer in such a situation is disqualified from bargaining for any one of his clients, which

may be adverse to the best interests of clients who could exculpate themselves by inculpating others.[7] Although we are told it is not the case here, it could be argued that the inquirer's firm has an interest in protecting client one, even though they do not represent him in the homicide matter, which would cause them to counsel client two not to cooperate with the prosecutor to client two's detriment.

In any case, the inquirer is not disqualified under Rule 1.7(b)(2) so long as the inquirer can obtain client two's consent under Rule 1.7(c). While the inquirer states that he has spoken with client two and his family about the multiple representation situation and they still wish to go forward with the inquirer, it is not clear from the inquiry whether there has been full compliance with Rule 1.7(c). Rule 1.7(c) requires full disclosure of the possible adverse consequences of multiple representation. *See, e.g.,* Opinion 217 (1991). In particular, the inquirer should advise client two that if circumstances change, the inquirer could be disqualified from continuing the representation unless client one gives consent as required by Rule 1.7(c).

**2. Withdrawal**

The inquirer and his firm are not currently disqualified from representing client two and client one simultaneously, and need not withdraw from either representation. Should circumstances change so that Rule 1.7(b)(1) comes into play, and consent under Rule 1.7(c) cannot be obtained from both client two and client one, then the inquirer would have to withdraw from the representation of client two. *See* Rule 1.16(a). Even if the inquirer were to withdraw from the representation of client two, we do not see any reason for the inquirer's partner to withdraw from the representation of client one in the unrelated weapons possession cases.[8]

**3. Contact With Client One**

If the inquirer decides to seek client one's consent to the representation of client two, the inquirer should seek that consent through client one's counsel in the homicide case. As discussed above, in those circumstances in which the interests of client two and client one could be adverse, client two and client one should be considered to be parties to the same "matter." Rule 4.2(a),[9] therefore, prohibits contact with client one on client two's behalf except through counsel representing client one in the homicide matter.[10]

Inquiry No. 92-9-31
Adopted: October 20, 1992

1. The inquirer and his partner have agreed not to share information relating to their respective clients. However, such an "ethical wall" has only been discussed once in dicta by our Court of Appeals, and any inference that such a wall would lessen the strict imputed disqualification stated in Rule 1.10(a) was removed by the Court when it promulgated Comment [15] to Rule 1.10(a). Thus, the existence of an "ethical wall" does not remove the obstacle of imputed disqualification presented by Rule 1.10(a).
2. Client consent is not effective if the lawyer is not able to comply with other applicable rules. *See* Rule 1.17(c)(2); *see generally* Opinion 217 (1991).
3. The weapons possession charges against client one are clearly not the same matter as the murder charges at issue here.
4. For example, the prosecutor has written the Committee that "it may be necessary to negotiate with [client two] regarding immunity and other sensitive issues." This suggests that the prosecutor has not made a final decision on whether to grant immunity to client two or whether to charge him with some crime.
5. Even with consent, Rule 1.7(c)(2) requires withdrawal unless counsel can "comply with all other applicable rules with respect to such representation." On the facts provided to the Committee, we see no "other applicable rules" which would be violated by the proposed

representation.
6. See, for example, *United States v. Dowdy*, 440 F. Supp. 894 (W.D. Va. 1977) and *In re Investigative Grand Jury Proceedings*, 432 F. Supp. 50 (W.D. Va. 1977).
7. See cases cited in footnote 6.
8. This is not, for example, a situation in which confidences of client two would be used or revealed in the defense of client one on the weapons charges.
9. This Rule states:

> During the course of representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party known to be represented by another lawyer in the matter. . . .

10. While Rule 4.2(a) speaks of "parties" to a matter, it also applies to contacts with "any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question." Comment [4] to Rule 4.2.





The District of Columbia Bar | 1250 H Street NW, sixth floor | Washington DC 20005-5937 | 202-737-4700 | **Directions/Parking**
**©2007** District of Columbia Bar. All rights reserved. **Privacy Policy** | **Disclaimer** | **Author guidelines**