UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    PLAINTIFF,

vs.

803 CAPITOL STREET VALLEJO, CALIFORNIA 94590 ET AL.,

    DEFENDANTS.
_____/

CASE NO.:1:06-CV-01710-GK

CLAIMANT'S RESPONSE TO GOVERNMENT'S MOTION TO EXTEND THE STAY
AND
CLAIMANT'S MOTION TO PRESERVE VALUE OF SEIZED ASSETS AND DETERMINE OUTSTANDING MOTIONS

Claimant, Deborah Jeane Palfrey, by and through her undersigned counsel, (i) responds to the government's motion to extend the stay and (ii) moves to preserve the value of seized assets and determine outstanding motions and for grounds in support states:

**I.   THE COURT'S OBLIGATION IS TO MAKE A "DETERMINATION"**

Congress, when it enacted 18 U.S.C. §981(g)[1], required a district court to make a "determination" rather than an unarticulated "minute order"[2] before entering a stay of a civil forfeiture proceeding.

In the analogous "stay" procedure found at 18 U.S.C. §881(i) "Stay of civil forfeiture

---

[1] § 981(g)(1) "Upon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case."

[2] "MINUTE ORDER granting [36] the Government's Motion to Stay; this case is stayed for six months to permit resolution of the related criminal investigation; the Government may seek a further stay of this case in order to resolve forfeiture of the defendant properties as part of any criminal prosecution of claimant, if warranted . Signed by Judge Gladys Kessler on 3/9/07."

proceedings"[3], the express requirement of "good cause shown" is imposed upon the government. The requisite level of showing was articulated in *In re Ramu Corp.*, 903 F.2d 312, 320 (5th Cir. 1990):

> With respect to the second requisite, the government must also demonstrate "good cause" in order to obtain a stay. Since any relationship between criminal and civil cases raises the prospect of civil discovery abuse that can prejudice the criminal case, good cause requires more than the mere possibility of prejudice.. **A determination of good cause, and the resulting grant of a stay, can deprive claimants of property without a hearing for a long time**. This is an extremely harsh consequence, which has been analogized to the consequences of granting a preliminary injunction. . . . The government should at least be required to make a specific showing of the harm it will suffer without a stay and why other methods of protecting its interests are insufficient. **Any determination of "good cause" that warrants a stay simply must be accompanied by specific findings of fact and determinations that the government will suffer specific forms of prejudice**. (Emphasis added, citations omitted.)

Here, the analogous requirement of 18 U.S.C. §981(g) requires similar "specific findings of fact and determinations that the government will suffer specific forms of prejudice before a stay may be entered." Patently, no such "determination" was made by the this Court in its previous minute order and such a "determination" is required before that expired stay can be extended in this instance.

## II.  THE GOVERNMENT FAILS TO MAKE THE REQUISITE SHOWING

To justify the stay of this civil forfeiture matter, the government relies upon 18 U.S.C.

---

[3] "The filing of an indictment or information alleging a violation of this subchapter or subchapter II of this chapter, or a violation of State or local law that could have been charged under this subchapter or subchapter II of this chapter, which is also related to a civil forfeiture proceeding under this section shall, upon motion of the United States and for good cause shown, stay the civil forfeiture proceeding."

§981(g) which requires this Court to "determine that civil discovery will *adversely affect* the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case." (Emphasis added).

To meet its burden of convincing this Court of an "adverse affect", the government simply directs the Court to its first motion to stay stating: "For the same reasons set forth in the government's initial request for a stay, see Government's Memorandum of Points and Authorities in Support of the Motion to Stay (Document number 36-2) the United States requests the stay of the instant civil forfeiture proceeding be extended through conclusion of the criminal proceedings." A review of those reasons reveal they are now moot as the Claimant has been indicted and the pre-indicted reasons relied upon by the government are now irrelevant.

Indeed, there is no showing of "adverse affect". The government only makes three claims directed to discovery in the first motion to stay. First, that "Civil discovery also would provide improper opportunities for claimant to ascertain prematurely the details of any ongoing criminal investigation." [D.E. #36, ¶17]. That "investigation is now over and it is now "premature" for Claimant to now learn of those details. Second, the government claims "Moreover, requiring case agents to respond to civil discovery also would burden the law enforcement officials who, according to claimant, are conducting a contemporaneous criminal investigation." [D.E. #36, ¶18]. Again, the alleged "burden" is small and the criminal investigation is over. Last, the government alleged that "Counsel for claimant have not indicated that claimant would be prepared to submit to a deposition if the Court were to permit civil discovery to proceed now (or, more properly, after denying claimant's motion to dismiss)." [D.E. #36, ¶19]. Now, Claimant has unequivocally communicated to the government that she would submit to her deposition.

As such, the government has <u>not</u> met its burden of "adverse affect" upon the criminal prosecution. Accordingly, based upon the government's failure, there is <u>no</u> grounds for this Court to determine that "civil discovery will *adversely affect* the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case."

### III.   CONTINUING THE STAY WOULD VIOLATE DUE PROCESS

The Due Process guarantee of the right to have a hearing on a forfeiture at a "meaningful time" is secured by the Supreme Court's decision in *United States v. $8,850*, 461 U.S. 555, 564 (1983)[4]. Here, over **three hundred fifty (350)** have passed without a hearing on the probable cause for the seizure of <u>all</u> of Petitioner's assets.

Moreover, Congress, in the 2000 Civil Asset Forfeiture Reform Act, enacted 18 U.S.C. §983(f)(5) "Release Of Seized Property", in which Congress imposed upon the District Court a duty – **within 30 days of a motion to return property** – to determine if Petitioner's seized property should be "immediately" returned to her. This Court has adamantly <u>refused</u> to determine that motion and now is asked to further stay this matter indefinitely thereby depriving Claimant of this valuable right. Of course, the result is continued indigent status for Claimant.

Indeed, while the Court <u>refuses</u> to address the merits of the motion to return property, the

---

[4] "In *Barker v. Wingo*, 407 U.S. 514 (1972), we developed a test to determine when Government delay has abridged the right to a speedy trial. The *Barker* test involves a weighing of four factors: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. Id., at 530. Of course, *Barker* dealt with the Sixth Amendment right to a speedy trial rather than the Fifth Amendment right against deprivation of property without due process of law. Nevertheless, the Fifth Amendment claim here--which challenges only the length of time between the seizure and the initiation of the forfeiture trial--mirrors the concern of undue delay encompassed in the right to a speedy trial. The *Barker* balancing inquiry provides an appropriate framework for determining whether the delay here violated the due process right to be heard at a meaningful time."

Court should note there is a strong argument for such return given that many of the assets seized were obtain by Petitioner outside the statute of limitations period of five years.[5]  Here, the First Amended Complaint specifically alleges that: "From in or about 1996 through in or about 1999, Palfrey used money orders to purchase some of the defendant Coins from Mr. G's Coins in Vallejo, California." [D.E. #10, ¶49].  Hence, *prima facie*, the government has seized coins the forfeiture of which is barred by the five (5) year statute of limitations.  Yet this Court continues to maintain that it can simply ignore the Constitution, §983(f)(5) and the government's own admission to keep Claimant indigent and deprive her of her property.

Finally, the government gets all the benefits of the civil forfeiture proceedings without the burdens.  First, the government seizes the Claimant's property upon the thin read of an *ex parte* seizure warrant and then avoids the hearing mandated by §983(f)(5) with this Court's complicity.  Then, after indictment, the government avoids the burden of complying with the 21 USC §853(e)(1)(A)[6]'s requirement of an hearing on a motion to preserve the property.[7]  As a result, the

---

[5]   The statute of limitations in a forfeiture matter is governed by 18 U.S.C. § 981(d) which refers to 19 U.S.C. §1602 *et seq*.  At 19 U.S.C. § 1621(1) it is provided, in relevant part, that: "in the case of an alleged violation of section 1592 or 1593a of this title, no suit or action . . .may be instituted unless commenced within 5 years after the date of the alleged violation." Thus, any such claim as to alleged illegal acts which occurred more than five (5) years before the filing of the complaint – October 2001 – would be barred by the statute of limitation.

[6]   Made applicable by action of 18 U.S.C. §982(b)(1) "The forfeiture of property under this section, including any seizure and disposition of the property and any related judicial or administrative proceeding, shall be governed by the provisions of section 413 (other than subsection (d) of that section) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 853)."

[7]   21 U.S.C. §853(e)(3) states; " The court may receive and consider, at a hearing held pursuant to this subsection, evidence and information that would be inadmissible under the Federal Rules of Evidence."

government seizes, destitutes and the subjects Claimant to the misery of poverty as it delays the case so that in the end, the process is the punishment and the government avoids it burden of proof. *Accord*: *United States v. Riley*, 78 F.3d 367, 379 (8th Cir. 1996)("the government must demonstrate at a hearing that the RICO defendant is likely guilty and that the property to be restrained will be subject to criminal forfeiture.")

Claimant asks the Court to consider the implication of such a power vested in the government. As demonstrated here, the government can seize all the assets of a claimant thereby destituteing her. Then, though adjudication of such a seizure is constitutionally mandated, delay and threaten indictment. Such a coercive force residing in the government implicates that very notion of fairness resident in due process. *Cf.*: *Wardius v. Oregon*, 412 U.S. 470, 474 (1973)("Although the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . . it does speak to the balance of forces between the accused and his accuser."); *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993)("Our precedents establish the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property. See *United States v. $8,850*, 461 U.S. 555, 562, n. 12 (1983); *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972); *Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337, 342 (1969) (Harlan, J., concurring)*; Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).").

Against this backdrop of constitutional rights, the practical reality of civilly seizing Claimant's assets upon a defective pleadings, denying discovery to Claimant to test the legality of the search, seizure and forfeiture while the government has used the same civil proceeding to force Claimant to file a claim in this matter smacks of basic unfairness and eviscerates the speed trial right.

"Due process centrally concerns the fundamental fairness of governmental activity." *Quill Corp. v. Heitkamp*, 504 U.S. 298, 313 (1992). Indeed, when the Government directly or indirectly sponsors a civil suit for the purpose of aiding a criminal investigation, Fifth Amendment and ethical concerns are raised. *United States v. Kordel*, 397 U.S. 1, 10-11 (1970); *In re Grand Jury Subpoena*, 836 F.2d 1468, 1472 n. 6 (4th Cir.1988).

This Court can no longer be party to this egregious process but must immediately allow to Claimant the process she is due.

### IV.  THIS COURT MUST ADDRESS THE DISPOSITIVE MOTIONS

As the government notes, there are pending dispositive motions made by Claimant that this Court has ignored for over ten (10) months. What purpose is served by staying a case which might well have legal defects which require its dismissal?

### V.  THIS COURT IS OBLIGATED TO ADDRESS PRESERVING THE VALUE OF THE PROPERTY

Along with the Congressionally-imposed obligation to under 18 U.S.C. §983(f)(5) "Release Of Seized Property", to determine **within thirty (30) days** a motion to return property, this Court also has the burden under 18 U.S.C. §983(g)(6)[8] to enter orders to preserve property while the stay is in effect. This Court has previously refused Claimant's *ore tenus* request in that regard. However, in the hopes that an epiphany of revelation of this inferior court's duties imposed upon it by the Constitution and Congress will result in the Court taking up these matters, Claimant once <u>again</u> requests that the Court enter an order allowing for the sale of certain assets to preserve their value.

---

[8] "Whenever a civil forfeiture proceeding is stayed pursuant to this subsection, the court shall enter any order necessary to preserve the value of the property or to protect the rights of lienholders or other persons with an interest in the property while the stay is in effect."

Given that the last time Claimant made her wishes known in this regard, her Dolby stock fell four points, Claimant requests an opportunity to be heard in a closed session of Court regarding the necessary orders to preserve the value of the seized property.

## VI. CONCLUSION

A stay is <u>not</u> warranted here as the Government has <u>not</u> met its burden and this Court cannot now find an "adverse affect" on the criminal prosecution of Claimant for lack of such a showing by the government. Moreover, the stay of discovery should not prevent this Court from discharging its obligation to determine the Claimant's motions to (i) return property, (ii) dismiss the amended forfeiture complaint, (iii) suppress evidence and (iv) dismiss for outrageous government conduct.

### CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the served pursuant to LcvR 5.4(d) upon William R. Cowden, Assistant United States Attorney, Criminal Division, Asset Forfeiture Unit, 555 4th St., N.W., Room 4818, Washington, D.C. 20530 this October 1, 2007.

**MONTGOMERY BLAIR SIBLEY**
CENTER FOR FORFEITURE LAW
50 West Montgomery Avenue, Suite B-4
Rockville, MD 20850-4216
Voice/Fax:   (202) 478-0371
E-mail:        mbsibley@civilforfeiture.com


By:   /s/ Montgomery Blair Sibley
        Montgomery Blair Sibley
        D.C. Bar #464488