UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

        PLAINTIFF,

vs.

803 CAPITOL STREET VALLEJO, CALIFORNIA 94590 ET AL.,

        DEFENDANTS.
_____/

CASE NO.:1:06-CV-01710-JR

**RESPONSE TO MOTION TO SUBSTITUTE BY PRESTON BURTON AND TO VACATE PRE-MATURE ORDER GRANTING MOTION TO SUBSTITUTE**

Montgomery Blair Sibley, counsel for Claimant, Deborah Jeane Palfrey and Blanche Palfrey, hereby responds to Preston Burton's premature and putative "Notice of Appearance" [D.E.#76] and "Motion to Substitute" [D.E.#75] and this Court Pre-Mature Order Granting Motion to Substitute [D.E.#77] and states as follows:.

**I.    BACKGROUND**

In October 2006, Claimant Jeane Palfrey's assets – the Defendants herein – were seized. Shortly thereafter, undersigned counsel was retained by Claimant to represent her in her claim in this matter. Subsequently, the undersigned was retained to represent Claimant's mother, Blanche Palfrey who is seventy-six (76) year old and is in frail health with a weak heart and in the early stages of forgetfulness living in Florida. See [D.E. #55 – Blanche Palfrey Affidavit]. A copy of the affidavit is attached hereto as Exhibit "A". From that time to the present, undersigned counsel has spoken with Blanche Palfrey on numerous occasions.

As anticipated by the undersigned, on June 4, 2007, at approximately 8:30 p.m., two people knocked on Blanche's residence door and identified themselves as Maria Couvillion of the U.S.

Postal Service and Troy Burrus of the Internal Revenue Service and asked if they could speak with her. Having a weak heart and given the late hour, Blanche agreed, as she didn't want to get into an argument. [D.E. #55 – Blanche Palfrey Affidavit]

The two agents came into Blanche's house and questioned her for 30-45 minutes. During that questioning, Blanche told them that they should speak to the undersigned counsel, Mr. Sibley. In response, **both agents represented that they already had spoken with Mr. Sibley and that she should speak with them**. [D.E. #55 – Blanche Palfrey Affidavit]. This representation was false.

Thereafter, they asked Blanche questions and she answered, regarding her daughter's escort services and Blanche's finances. They did not tape record the interview to Blanche's knowledge, but were making written notes. [D.E. #55 – Blanche Palfrey Affidavit]

Two additional facts are significant. First, Claimant was with her mother for the three days preceding this visit by Federal Agents to Blanche Palfrey and had left only minutes before the Federal Agents appeared at her door raising the specter that the Agents waited until Claimant had left in order to confront Claimant's mother when she was along. Second, this Court must take judicial notice that a hearing on the temporary restraining orders was set for June 5, 2007, the day after the late-night visit.

Thereafter on June 14, 2007, Claimant made a motion to dismiss for outrageous government conduct. [D.E. #55]. Prior to that filing, a series of emails passed between Claimant, undersigned counsel and Preston Burton, a copy of which is attached as Exhibit "B".

Significantly, Preston Burton acknowledged in his June 6, 2007, email that undersigned counsel is Blanche Palfrey's attorney stating: "but blair as your mother's attorney needs to be the main complainant--they will likely claim a conflict, but he can make the point nonetheless". Plainly,

as of at least June 6, 2007, Preston Burton was aware that the undersigned was representing Blanche Palfrey.

Just as significant, Claimant Jeane Palfrey states in her email of June 6, 2007, to Preston Burton that: "I remain terribly distressed about their late night visit to my ailing – **and often times confused** – mother."

Notably, and perhaps unknown to this Court as it only was substituted as the presiding Judge in this matter on November 28, 2007, Claimant had made significant allegations of (i) irreconcilable difference and (ii) ineffective assistance of counsel against Preston Burton which were sealed in the companion criminal case 1:07-cr-00046-JR at D.E. #92 & D.E. #93. Moreover, Claimant's desire that undersigned counsel represent her in the civil forfeiture matter was likewise expressly stated in her affidavit found in the criminal case at D.E. #32.[1]

In January 2008, for reasons that are still under seal but known to this Court, undersigned counsel was relieved as Claimant's criminal counsel. Significantly, Claimant did not ask that undersigned counsel be removed in this action or the interlocutory appeal pending in this matter in the D.C. Circuit Court of Appeal as Case No.: No.: 07-5143.

On May 1, 2008, Claimant was found dead by her mother, Blanche Palfrey, as a result of an apparent suicide. In an amazingly callous display, Preston Burton – with the full consent of the government – immediately moved the Court for an order requesting: "that he be authorized to contact the defendant's family and representatives of her Estate in connection with matters related to the criminal and civil forfeiture proceedings before the Court. [D.E. #312 in Case

---

[1] By separate motion in the criminal case, undersigned counsel is requesting that this Court unseal those documents.

1:07-cr-00046-JR]. Notably, Preston Burton in his apparent panic to contain the potential damage to his reputation that undersigned counsel's continuing the course that Claimant sought in pursuit of justice in this case, <u>failed</u> to mention to the Court in D.E. #312 is that Blanche Palfrey was already represented by undersigned counsel – a fact Preston Burton had known for almost a year.

Then, without pausing to contact undersigned counsel, Preston Burton appeared at the funeral of Claimant on May 4, 2008, and induced Blanche Palfrey in her desolated state through professionally abhorrent behavior at the funeral of her daughter found by Blanche not three days earlier to let Preston Burton represent Claimant's estate in this matter.

After sending Preston Burton a courtesy copy of the "Statement Noting the Death of Claimant and Motion for Substitution" filed in this matter, undersigned counsel received an email from Preston Burton attached hereto as Exhibit "C". In that email Preston Burton admits that he spoke with Blanche Palfrey at the funeral and sent his formal retainer letter to her by express mail the next day.

Subsequently, on two occasions, undersigned counsel spoke with his client Blanche Palfrey on the telephone but found her to be too distraught and disoriented to engage in meaningful conversation about this matter. Accordingly, arrangements were made for undersigned counsel to meet with Blanche Palfrey in person in early July in Florida.

## II. PRESTON BURTON'S UNDUE INFLUENCE ON BLANCHE PALFREY WARRANTS THIS COURT INQUIRY

Plainly, this Court has authority to protect clients by inquiring into conflicts of interest and undue influence by attorneys. *Cf*: *In re Michaelson*, 511 F.2d 882, 888 (9th Cir.), *cert. denied*, 421 U.S. 978 (1975)("The courts have inherent power to regulate the bar. The courts have the right to

inquire into fee arrangements both to protect the client from excessive fees and to assist an attorney in collection of his fee, but more importantly, the court may inquire into fee arrangements to protect against suspected conflicts of interest. When an attorney is paid by someone other than his client to represent that client there is a real and present danger that the attorney may in actuality be representing not the interests of his client, but those of his compensator. Not only does the client have a right to know who is paying his attorney, but the court retains the right to satisfy itself that no conflict exists and that the attorney is fulfilling his duty of loyalty to his client."); *Rosquist v. Soo Line R.R.*, 692 F.2d 1107, 1111 (7th Cir.1982)("Even when the validity of the fee contract itself has not been challenged by the parties, it is within the court's inherent power of supervision over the bar to examine the attorney's fee for conformance with the reasonable standard of the Code of Ethics"); *In re Zyprexa Products Liability Litigation*, 424 F.Supp.2d 488, 492 (E.D.N.Y. 2006)(" Supervision includes the power to determine that the fee contract was not obtained through undue influence or fraud and that the amount of the fee is not unfair or excessive under the circumstances of the case").

      Here, such concerns are well justified by the facts as presented herein and known to the Court. First, Blanche Palfrey by her own statement is in poor health. Second, her daughter independently stated over one year ago that her mother was: " ailing – and often times confused." Third, this Court can only imagine the shock to Blanche Palfrey at finding her daughter dead from an apparent suicide only to be confronted with the Ambulance-chasing Preston Burton who – upon representations of fact which bore material omissions to this Court – had persuaded this Court to enter an order permitting such contact, though presumably not intended by this Court to be at Claimant's funeral.

      In this regard, the ABA Model Rules of Professional Conduct, Information About Legal

Services, Rule 7.3 Direct Contact With Prospective Clients states: "(b) A lawyer shall not solicit professional employment from a prospective client by written, recorded or electronic communication or by in-person, telephone or real-time electronic contact even when not otherwise prohibited by paragraph (a), if: (2) the solicitation involves coercion, duress or harassment." The D.C. Bar has a similar rule found at Rule 4.2—Communication Between Lawyer and Person Represented by Counsel. In both events, even if Preston Burton did not violate the letter of these Rules, the spirit if certainly violated by his attempt to "poach" undersigned counsel's client.

Moreover, this Court also has just cause to consider who has and will be paying Preston Burton in this matter and whether he has a conflict of interest.

As to the payment, the normal practice of appointments under the Criminal Justice Act was circumvented in the criminal matter when Public Defender A.J. Kramer was relieved from representation by Judge Kessler. As related to the undersigned by both Preston Burton and his associate, Bree Murphy, Preston Burton was contacted not initially by Judge Kessler, but other judges who wanted to insure that an attorney of discretion would handle Claimant's criminal matter. For reasons that are not clear, Preston Burton's firm – Orrick with more than 1,000 lawyers in 18 offices worldwide – was chosen to represent Claimant in the criminal case. When that representation was terminated by Claimant and the undersigned appeared as her criminal counsel, an apparent co-ordinated effort between the government and private individuals was conducted to undermine Claimant's confidence in the undersigned ultimately resulting in the re-substitution of Preston Burton as Claimant's criminal counsel.

As this Court well knows, at the criminal trial Preston Burton <u>failed</u> to call a single client in Claimant's defense thereby insuring that none of the numerous public and private officials that were

potentially among Claimant's clients would be publically embarrassed,  With over 1,000 lawyers with hundreds of thousands of clients, Orrick was certainly spared an embarrassing conflict of interest and potentially earned significant future good-will.

The prospect of undersigned counsel re-trying this matter in this case in the style that Claimant wanted – see sealed affidavit of Claimant at D.E. #32 in the criminal case – with the calling of hundreds of clients now known through heretofore never released by the undersigned telephone records of the service – is potentially devastating to Preston Burton as it will likely reveal the deep conflict of interest he and his firm had in the criminal representation of Claimant.

Accordingly, this Court has just authority and cause and thus is obligated to inquire whether Preston Burton inappropriately exerted undue influence over Blanche Palfrey to secure his representation of her in this matter.

WHEREFORE, undersigned counsel request that this Court convene an evidentiary hearing to inquire of Preston Burton as to his behavior in this and the companion criminal case.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing was served pursuant to LcvR 5.4(d) upon William R. Cowden, Assistant United States Attorney, Criminal Division, Asset Forfeiture Unit, 555 4th St., N.W., Room 4818, Washington, D.C. 20530 and as a courtesy upon Preston Burton, Columbia Center, 1152 15th Street, N.W., Washington, D.C. 20005-1706 this June 14, 2008.

> **MONTGOMERY BLAIR SIBLEY**
> CENTER FOR FORFEITURE LAW
> 1629 K Street, Suite 300
> Washington, D.C. 20006
> 202-508-3699
> 202-478-0371 Fax
>
> By:   /s/ Montgomery Blair Sibley
>         Montgomery Blair Sibley

# AFFIDAVIT

Blanche Palfrey, pursuant to the authority of 28 U.S.C. §1746 and under penalty of perjury states:

1. In or about October 2006, I spoke with Montgomery Blair Sibley about the seizure of my daughter Deborah Jeane Palfrey's assets. At that time he offered to represent me in case any investigation of me was undertaken by the government. I accepted that offer and he became my attorney. I was instructed by him not to speak with anyone about this matter but refer all questions to him. We have spoken several times since last fall.

2. On June 4, 2007, at approximately 8:30 p.m., two people knocked on my residence door and identified themselves as Maria Couvillion of the U.S. Postal Service and Troy Burrus of the Internal Revenue Service and asked if they could speak with me. I have a weak heart and given the late hour, I agreed, as I didn't want to get into an argument.

3. They came into my house and questioned me for 30-45 minutes. During that questioning, I told them that they should speak to Mr. Sibley. In response, both agents indicated that they already had spoken with Mr. Sibley and that I should speak with them.

4. Thereafter, they asked me questions and I answered, regarding my daughter's escort services and my finances. They did not tape record the interview to my knowledge, but were making written notes.

**I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.**

Date: 6-8-07

*Blanche Palfrey*
Blanche Palfrey

**A FALSE STATEMENT OR CLAIM MAY SUBJECT A PERSON TO PROSECUTION UNDER 18 U.S.C. §1001 AND/OR §1621 AND IS PUNISHABLE BY A FINE AND UP TO FIVE YEARS IMPRISONMENT.**

Exhibit "A"

## Montgomery Sibley

**From:** Burton, Preston [pburton@orrick.com]
**Sent:** Wednesday, June 06, 2007 9:07 AM
**To:** jeanepalfrey@sprynet.com
**Cc:** Murphy, Bree; mbsibley@civilforfeiture.com
**Subject:** Re: Jeane Palfrey Update #11

I will send a letter to cowden complaining ==but blair as your mother's attorney== needs to be the main complainant--they will likely claim a conflict, but he can make the point nonetheless
--------------------------
Sent from my BlackBerry Wireless Handheld


----- Original Message -----
From: Jeane Palfrey <jeanepalfrey@sprynet.com>
To: Burton, Preston
Cc: Murphy, Bree; 'Montgomery Sibley' <mbsibley@civilforfeiture.com>
Sent: Wed Jun 06 08:36:42 2007
Subject: RE: Jeane Palfrey Update #11




Preston… my mother really isn't okay, nor am I with any of this. I have to leave for the airport in a short while, so I will be out of email contact until about lunchtime. I would greatly appreciate it, if in the interim you would do something, here. Believe me, I am not a high maintenance individual and consequently, I won't expect/ask much of you in the coming weeks/months – except of course, to get the charges dismissed; however, with this situation I am asking you to protest officially on my behalf. -Jeane




-----Original Message-----
From: Burton, Preston [mailto:pburton@orrick.com]
Sent: Wednesday, June 06, 2007 5:28 AM
To: jeanepalfrey@sprynet.com
Cc: Murphy, Bree; mbsibley@civilforfeiture.com
Subject: Re: Jeane Palfrey Update #11



Jeanne,
While these tactics are heavy-handed, they are not improper and there is nothing that can be done about it. They are entitled to interview potential witnesses and that term is elastic enough to cover this situation. I spoke to your mother and I think no real damage was done to the case and, more importantly, I think your mother is okay, though she was understandably unsettled by this.
Preston
--------------------------
Sent from my BlackBerry Wireless Handheld


----- Original Message -----
From: Jeane Palfrey <jeanepalfrey@sprynet.com>
To: Burton, Preston
Cc: Murphy, Bree; 'Montgomery Sibley' <mbsibley@civilforfeiture.com>
Sent: Wed Jun 06 08:06:55 2007

                                                      Exhibit "B"

Subject: RE: Jeane Palfrey Update #11

==Preston… please work with Blair, to draft a response to Agents Burrus and Couvillon's actions, from Monday night. As you might be able to comprehend from my email traffic this morning, I remain terribly distressed about their late night visit to my ailing – and often times confused – mother.== I really want something done here and I want it done ASAP. -Jeane

Montgomery Blair Sibley, Chartered
Attorney & Counselor at Law
Admitted to Practice: Florida, New York, District of Columbia
www.civilforfeiture.com <file:///C:\Documents%20and%20Settings\Owner\Application%20Data\Microsoft\Stationery\www.civilforfeiture.com>

    1629 K Street, N.W.
Suite 300
Washington, D.C. 20006
202-508-3699
202-478-0371 (E-Fax)

Greetings:

Two points of interest:

    First, at the hearing today before Judge Kessler, she reserved decision on whether to modify the temporary restraining order which prohibits the release of copies of the telephone records of the escort service by Jeane Palfrey. A decision is expected in the next few days.

    Not coincidentally -- as the government has spent three years investigating Jeane -- last night at 8:30 p.m., two federal government agents arrived at the door of Jeane Palfrey's seventy-five (75) year old in poor health mother in Florida to interrogate her about Jeane. This message pitch from the U.S. Government -- coming the day before the hearing before Judge Kessler -- that the government is considering going after Jeane's mother's assets, is indicative of the intimidation tactics the government is employing to achieve the ends its seeks. Jeane's attorneys are considering options in response to this latest tactic from Alberto Gonzalez and Company.

    Please let me know if you (i) would like me take your name from this mailing list or (ii) have any questions. The best way to get a response is to email me, but you can try the office number above.

    Montgomery

_____

===========================================================

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this

## Montgomery Sibley

**From:** Burton, Preston [pburton@orrick.com]
**Sent:** Tuesday, May 06, 2008 12:40 PM
**To:** mbsibley@earthlink.net; Cowden, William (USADC); Butler, Daniel (USADC); Catherine Connelly
**Subject:** RE: U.S. v. 803 Capitol Street Vallejo, CA et al.

Blair,

I believe your pleading is incorrect based on my discussions with Blanche Palfrey. Blanche orally requested that I represent her individual interests and those of the estate. I confirmed that request with her this morning following the receipt of your email. I am sending her a formal retainer letter to confirm that is her desire.

Preston

---

**From:** Montgomery Sibley [mailto:mbsibley@earthlink.net]
**Sent:** Tuesday, May 06, 2008 9:24 AM
**To:** 'Cowden, William (USADC)'; 'Butler, Daniel (USADC)'; 'Catherine Connelly'
**Cc:** Burton, Preston
**Subject:** U.S. v. 803 Capitol Street Vallejo, CA et al.

### Center for Forfeiture Law

**Montgomery Blair Sibley**
**1629 K Street, Suite 300**
**Washington, D.C. 20006**
[www.civilforfeiture.com](www.civilforfeiture.com)
**202-508-3699 / 202-478-0371 (E-Fax)**
**Admitted to Practice: New York & Washington D.C.**

Greetings:

Please find attached my Rule 25 notice and motion to substitute and abate. Please let me know your position on this pleading so I may discharge my obligation under the local rules to confer.

yours,

Montgomery

===============================================================

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication, unless expressly stated otherwise, was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue